SCHOOL DISTRICT No. 25, STAFFORD COUNTY, v. THE STATE OF KANSAS.

SCHOOL DISTRICT *de facto, not de jure; Valid Bonds.* In 1875, the legislature of the state of Kansas passed an act detaching a portion of the territory of Stafford county, and attaching the same to the county of Barton. (Laws of 1875, ch. 61, p. 88.) Within this detached and attached territory a school district was, in May, 1878, created and organized by the county superintendent of Barton county, acting in conjunction with the inhabitants of such school district, which school district was numbered 58. Shortly afterward, school-district bonds were duly voted and issued, for the purpose of building a school house; and the bonds were sold by the school district to the school fund commissioners of the state of Kansas, who purchased them with money drawn from the permanent school fund of the state. Afterward, it was discovered that the detaching of said territory from the county of Stafford reduced the area of Stafford county below the constitutional limits, (Const., art. 9, § 1;) and thereupon a proceeding was instituted in the supreme court to test the constitutionality of the legislative act, and to restore the detached territory. (*The State v. St. John,* 21 Kas. 591.) The act was declared unconstitutional by the supreme court; and thereupon the boundaries of Stafford and Barton counties, as they had existed before the act, were restored, and all this detached and attached territory, including that within the limits of School District No. 58, became again a part of Stafford county. For some time thereafter, no effort was made to disorganize or change School District No. 58; it retained its number; was composed of the same inhabitants; was controlled by the same officers, and enjoyed all the privileges that it had enjoyed during the time that it was included within and subject to the jurisdiction of the county of Barton. The school house which had been built with the avails of these bonds was still used and occupied by the inhabitants of the district; and the school census was taken in Stafford county as it had been in Barton county; and a requisition, made upon the permanent school fund for its (the school dis-

School District v. The State.

trict's ) due proportion of the distributive share of such fund, was duly honored, and it received the money to which it was supposed to be entitled, just the same as all other school districts of the state of Kansas received their money. Up to this time, the county of Stafford had been an unorganized county, and attached to Pawnee county for judicial purposes. (Laws of 1874, ch. 67, ¿2; Comp. Laws of 1879, p. 323.) But soon after the restoration of this territory to Stafford county, such county was duly organized; and thereupon the first county superintendent of Stafford county proceeded to renumber the school districts within the territory which had been detached and restored, but left the boundaries thereof the same as they had been created by the county superintendent of Barton county. In the ensuing fall an election of officers took place, and the county superintendent who was then elected, proceeded to change the boundaries of all these districts, enlarging some and diminishing others, but in no instance leaving the boundaries of any district the same as they had been made by the county superintendent of Barton county. In the case of School District No. 58, however, the territory was enlarged in all directions, and named School District No. 25, which last-mentioned school district included all the territory which had previously been included within the original boundaries of School District No. 58. *Held,* That School District No. 58 was irregularly created and organized, and therefore at the time of its creation and organization was not a school district *de jure;* that, instead of being created and organized by the county superintendent of Barton county, acting in conjunction with the people of such school district, as it was created and organized, it should have been created and organized by a deputy county superintendent of Stafford county, appointed by the county commissioners of Pawnee county, such deputy county superintendent acting in conjunction with the people of such school district. ( Laws of 1873, ch. 72, ¿¿31 and 32; Comp. Laws of 1879, pp. 270, 271.) But as the people of the district were at the time entitled to have the district created and organized; and as there were valid and existing laws authorizing the same to be done, and as the district was in fact created and organized in exact conformity to such laws, except as to such irregularity; and was created and organized by the people of the district, acting in conjunction with the county superintendent of Barton county, who was authorized by law and within his own jurisdiction to so act in the creation and organization of school districts; and as this district was at that time in fact, though not in law, within the territorial jurisdiction of such county superintendent; and as the validity and legal existence of the district were recognized by all persons who had or were authorized to have dealings with the district, the district was undoubtedly a school district *de facto,* notwithstanding such irregularity; and all its acts were and are now, binding, not only upon the district itself, and upon third persons, but also upon its successor, said School District No. 25.

### Error from Stafford District Court.

ACTION by *The State* against *School District No. 25,* in Stafford county, to establish the liability of the defendant district upon certain bonds and coupons issued by School District No. 58, in Barton county. Trial at the December Term, 1881, of the district court, and judgment for the plaintiff. The defendant brings the case to this court. The opinion states the facts.

*A. B. Jetmore,* and *Davis & Taylor,* for plaintiff in error.

*W. A. Johnston,* attorney general, and *W. H. Rossington,* for The State.

*A. L. Redden,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the state of Kansas against School District No. 25, Stafford county, to establish the liability of said school district upon certain bonds and coupons issued by School District No. 58, Barton county. The facts of the case, as set forth in the petition of the plaintiff, are in substance as follows: By an act of the legislature of 1875, (Laws of 1875, ch. 61, p. 88,) certain territory included within the boundaries of the unorganized county of Stafford was detached from that county, and added to and included within the boundaries of the county of Barton. Within this territory, in accordance with law, and upon the petition of the inhabitants, the county superintendent of Barton county proceeded to, and did, in May, 1878, constitute and create School District No. 58. Shortly after the creation of this school district, the electors thereof, in pursuance of law, and at an election duly ordered and held, voted to issue the bonds of the school district for the purpose of erecting a school house within such district. The bonds were issued in conformity with this vote, and the proceeds arising from the sale thereof were expended in the building of a school house. The purchasers of these bonds

were the school fund commissioners of the state of Kansas, who bought them with money drawn from the permanent school fund of the state, and the bonds thereupon became a part of that fund. It was subsequently discovered that the detaching of this territory from the unorganized county of Stafford by the legislative act above mentioned reduced the area of Stafford county below the constitutional limits, (Const., art. 9, §1;) and thereupon a proceeding was instituted in the supreme court of the state, to test the constitutionality of the legislative act, and to restore the detached territory. (*The State v. St. John,* 21 Kas. 591.) The said act was held to be unconstitutional by the supreme court; and thereupon the boundaries of Stafford and Barton counties as they existed before the act were restored, and all this territory, including that within the limits of School District No. 58, became again a part of Stafford county. For some time thereafter no effort was made to disorganize or change School District No. 58. It retained its number; was composed of the same inhabitants; was controlled by the same officers, and enjoyed all the privileges that it had enjoyed during the time that it was included within and subject to the jurisdiction of the county of Barton. The school house which had been built with the avails of these bonds was still used and occupied by the inhabitants of the district, and the school census was taken in Stafford county as it had been in Barton, and a requisition made upon the permanent school fund for its (the school district's) due proportion of the distributive share of such fund was duly honored, and it received the money to which it was supposed to be entitled, just the same as all other school districts of the state of Kansas received their money. Soon after the restoration of this territory, the county of Stafford was organized; and thereupon the first county superintendent of Stafford county proceeded to renumber the school districts within the territory which had been detached and restored, but left the boundaries thereof the same as they had been created by the county superintendent of Barton county. In the ensuing fall an election of officers took place, and the

county superintendent who was then elected proceeded to change the boundaries of all these districts, enlarging some and diminishing others, but in no instance leaving the boundaries of any district the same as they had been made by the county superintendent of Barton county. In the case of School District No. 58, however, the territory was enlarged in all directions, and named School District No. 25, Stafford county, which last-mentioned school district included all the territory which had previously been included within the original boundaries of School District No. 58, Barton county.

The defendant demurred to the plaintiff's petition, upon the ground that it did not set forth facts sufficient to constitute a cause of action. Upon the hearing of this demurrer, the court below overruled the same, and delivered the following opinion:

"This case is heard on petition, and demurrer thereto.

"The petition shows that School District No. 58, in Barton county, Kansas, was, as a matter of fact, duly and properly organized.

"That being so organized, and after having complied with all the statutory conditions precedent, did, on the 25th day of May, 1878, execute and deliver the two certain bonds or obligations in writing, with interest coupons thereto attached, and sell the same to the commissioners of the permanent school fund of the state of Kansas, whereby they became the property of the state of Kansas, the plaintiff in this action.

"That the plaintiff still holds them, the same being due and unpaid.

"That because of the unconstitutionality of the law, approved March 5, 1875, attaching a portion of the county of Stafford, including this territory, to Barton county, the territory of said school district was relegated to Stafford county; and at the commencement of this suit and at the present time this territory, with its inhabitants and school property, is included in and forms a part of said School District No. 25, Stafford county, Kansas.

"The above is a sufficient statement of the case in the plaintiff's petition to lead us to a consideration of the questions raised by the demurrer of the defendant, which are:

"1. Though, as a matter of fact, School District No. 58, Barton county, Kansas, was organized and issued its bonds

and sold them to the state permanent school fund of Kansas, as alleged in the plaintiff's petition, yet, as a matter of law, no such school district ever existed, for the reason that the said act of the legislature, which took the territory forming said district from Stafford county, was, and has been held by our supreme court, unconstitutional, and that therefore the superintendent of Barton county had no power to put in motion the machinery whereby said district was created, or to issue and sell the bonds in question, and hence what he did was absolutely void.

"2. That if School District No. 58, Barton county, Kansas, was a school district with power to issue bonds, sell them, and bind itself by its promise to pay them, School District No. 25, Stafford county, is not liable on such bonds, because it is another and distinct corporation.

"Now, conceding the unconstitutionality of the act of the legislature taking the territory included within this district with other territory from Stafford county, and attaching it to Barton county, was School District No. 58, Barton county, Kansas, at the time it issued the bonds, the payment of which·is demanded by this suit, such a corporation as could execute and sell and deliver bonds, and bind itself by its promise to pay them?

"I think it was.

"The law making its territory a part of Barton county was approved March 5, 1875. In May, 1878, (more than three years afterward,) there being no question of the validity of such law, the superintendent of public instruction of Barton county, pursuant to the provisions of the law in such case made and provided, together with the people of the territory within the boundaries of said district, created and constituted such territory and the inhabitants thereof a school district, and numbered the same 58.

"It is conceded as a matter of fact, that every step necessary to constitute a proper school district under the laws of the state of Kansas was duly and properly taken in the creation of said District No. 58, and that afterward every step necessary for the proper and legal issue of bonds by a school district was duly and legally taken in connection with the execution, sale and delivery of the bonds by District No. 58.

"On the authority of the case of *Hildreth v. McIntire*, 19 American Decisions, p. 63, (1 J. J. Marshall, 206,) as well as the decisions of our own supreme court in the cases of *Wildman v. Anderson*, 17 Kas., pp. 344, 347, 348; *Voss v. School*

*District*, 18 Kas., pp. 467, 472, 473; *Krutz v. Paola Town Co.* 20 Kas., pp. 402, 403; and *Pape v. Capitol Bank*, 20 Kas. 440, 445, I am satisfied that the law recognizes a corporation *de facto* as distinguished from a corporation *de jure*, in the same manner and to the same extent that it recognizes an officer *de facto* from an officer *de jure*, and that the same rule that defines and distinguishes an officer *de facto* from an officer *de jure*, also defines and distinguishes a corporation *de facto* from a corporation *de jure*.

"An officer *de facto* is one, though not a good officer in law, who has color of appointment or an election, and whose acts therefore the law recognizes as valid.

"Applying this definition to a corporation, a corporation *de facto* is one, though not good in law upon an inquiry in the nature of *quo warranto*, yet exists by color of authority, the acts of which the policy of the law recognizes as binding upon it and third parties. Such a corporation must have the same *de facto* existence as a corporation *de jure*—that is, it must exist in fact, and be apparently possessed of all the powers of a corporation *de jure*, and must exist in good faith, holding itself up before the public as a corporation, with full power to act as such.

"School District No. 58 was duly and properly organized. It had an actual *de facto* existence, and for a long time held itself up before the public as such, and in good faith claimed to be a proper corporation, and so dealt with the public, (including this plaintiff,) issued its bonds, sold them, and with the proceeds built within its boundaries a school house, organized and ran a school therein, and as such school district obtained its share of the state school fund, and used the same in like manner as *de jure* school districts. If all these things did not make School District No. 58 a corporation *de facto*, then it is difficult to understand what would. But the defendant claims that the color of authority to act, or the corporate existence, must flow from a constitutional law, and that the action of the superintendent of Barton county and the inhabitants of said District 58, Barton county, was under a void law, and therefore void. It is true that the law of 1875, attaching a portion of the territory of Stafford county to Barton, was void; but such law did not authorize the creation of a school district. The action of the superintendent of Barton county and the inhabitants included within the boundaries of District No. 58, of Barton county, in creating said District No. 58 out of a portion of such attached terri-

tory, was authorized by another and valid law of the state. But the position taken by the defendant, so far as it relates to the necessity that the authority to act be under a constitutional law, is not the true one. I think the weight of authority on this subject supports the position that the acts of one who claims to be the officer he assumes to be, and has color of an appointment, or an election under a legislative act having all the forms of law, until such act is adjudged unconstitutional in the courts, are valid and binding upon the officer and third parties; and the same rule applies to corporations. (*Ex parte Strang*, 21 Ohio St. 610; *Laver v. McGlachlin*, 28 Wis. 364, 365, 366; *Brown v. O'Connell*, 4 Am. Rep. 89; same case, 36 Conn. 432.)

"In this latter case, the legislative authority of the state of Connecticut attempted to give authority to the city council of the city of Hartford to appoint a police judge. The city exercised such delegated authority and appointed a police judge, who for a time served as such. Afterward the law conferring such authority was adjudged unconstitutional, and the appointments under its provision void; and yet the acts of the judge while acting as such were held by the court of last resort of said state to be valid, and the judge an officer *de facto*. So in this case, the law attaching the territory of Stafford county, including the territory of District 58, Barton county, to Barton county jurisdiction of such territory for school-district purposes; and the district created by him, and the inhabitants thereof within such territory, existed at least by color of authority emanating from the law-making power of the state. (See case of *State v. Carroll*, 9 Am. Rep., pp. 428, 429, 430, 431, 432, 433, 434; same case, 38 Conn. 449.)

"So, in like manner, a corporation created pursuant to and acting under such a law, is a corporation *de facto*. It may be a question whether, when after the law of 1875 was adjudged unconstitutional, and Stafford county was held to exist, with its territory, the same as immediately before the passage of said act, and said county of Stafford was temporarily organized, and the county superintendent of said county recognized School District No. 58, created while such territory was a part of Barton county, by taking a census of the pupils of school age therein, reporting the same; and obtaining from the state school fund the apportionment of such fund for said district, such district did not thereby ripen into a corporation *de jure*. But it certainly became a corporation *de facto*, with

power to issue and sell its bonds, and bind itself by its promise to pay them.

"Such being the case, was the liability of said District 58, Barton county, transferred to the defendant, District No. 25, Stafford county?   I think it was.

"The defendant district succeeded to all the rights and property of said District 58, including all its territory, inhabitants, school property, and power of taxation, and by reason thereof assumed the indebtedness of the extinguished corporation, District 58, the successor of which it became. The supreme court of the United States, in the case of *Mount Pleasant v. Beckwith*, 100 U. S. 514, has so decided.

"It may properly be said that this is not a case where a non-resident corporation went into a jurisdiction and induced the inhabitants thereof to vote bonds for the benefit of such foreign corporation, but one in which the inhabitants of the jurisdiction on their own motion voted bonds for their own benefit to build a school house in which to educate their own children, and who then went abroad with their bonds, and induced others to purchase them.   For this reason, together with the fact that all the property of District 58 is now in the possession of the defendant district, the equities of this case are with the plaintiff, and the plaintiff has a right to recover.   The petition therefore states a sufficient cause of action.

"The demurrer is overruled, and judgment entered for the plaintiff for the sum of $245.33, to bear interest at 10 per cent. from the 5th day of January, 1882."

This ruling of the court below overruling the defendant's demurrer is the only ground upon which the defendant, plaintiff below, bases its petition in error, and the only ground upon which it seeks a reversal of the judgment of the court below. The defendant, plaintiff in error, claims that School District No. 58 never was a school district either *de jure* or *de facto*, and consequently that the court below erred in holding that such district was a school district *de facto*, and in holding that the defendant was liable on the bonds in controversy, as the successor of such School District No. 58.   Was the ruling of the court below erroneous?   It would be very unfortunate for the interests of justice if such were really the case.   Here we have an act of the legislature, plain and explicit in all its

5 — 29 KAS.

terms, providing in unmistakable language for detaching this territory from the county of Stafford and attaching the same to the county of Barton; and for years all persons believe the act to be valid, though for occult reasons the act is void; and in the full faith that the act is valid and that the territory has been so detached and attached, the inhabitants of such territory duly petition the county superintendent of Barton county to create this school district from such territory; he makes the necessary order; the school district is duly organized; the school census is duly taken; 'a school meeting is duly called; a director, a clerk and a treasurer are duly elected; a petition is duly circulated for the submission of a proposition to vote bonds to build a school house; the bonds are regularly voted and issued in conformity to law, and duly registered by the county clerk of Barton county, under the direction of the officers of the school district; and with the money arising from the sale of these bonds—which, by the way, are duly offered for sale, and sold to the school fund commissioners of the state of Kansas, in accordance with the statutes of the state—a school house is built; a school teacher is employed; the children of the district there congregate within its commodious shelter, and are there taught the elements of knowledge; and this continues from the date of this organization, which was in every respect legal in form, down to and long after the time when the decision of the supreme court declares the legislative enactment which detached this territory from Stafford county and attached the same to Barton county, to be unconstitutional and void. Even after this decision is made, the old number of the school district is for some time preserved, and the organization preserved intact, with the same officers as before the decision; and the district by its old number makes its claim for such proportion of school money as its census of children of school age shows it to be entitled to, and it receives the same.

This district was everywhere recognized and acknowledged to be a legal and valid district. It was not only so recognized and acknowledged by its own inhabitants and by its

own officers, but it was also recognized and acknowledged to be a legal and valid school district by the county officers of Barton and of Stafford counties, and also by the state officers of the state of Kansas; and all this recognition would seem to have been in the best of faith, and without the slightest element of dishonesty or fraud.

There can be no doubt that when the inhabitants of this territory petitioned to be constituted a school district, they did it in the best of faith; without the slightest intent to commit a fraud; without any purpose to repudiate any indebtedness which they might create, and in fact innocent of the slightest belief on their part that they might repudiate such indebtedness by reason of the unconstitutionality of the act of the legislature which made them residents of Barton county. There can be as little doubt that the county superintendent believed, when he issued the order creating this school district, that he was acting within the scope of his authority, and was proceeding in strict compliance with his official duty. Neither can it be supposed that the school-fund commissioners, when they purchased these bonds, believed otherwise than that they were dealing with a legal and valid school district, possessing all the lawful rights, all the powers, privileges and immunities possessed by other school districts of the state. There was nothing, in fact, to put them upon inquiry as to the defective character of this organization, because, although in furtherance of justice the courts uphold the maxim that "ignorance of law excuses no one," it is nevertheless true that the unconstitutionality of legislative acts, until they are attacked directly, is often so latent and obscure as not to be discoverable, even by courts of justice, in any casual examination of such acts. In this instance the element of unconstitutionality was entirely outside of the act itself, hidden and obscure, and could only be discovered by ascertaining the actual area within the diminished boundaries of Stafford county. And the fact that the jurisdiction and power of Barton county, over this attached territory, were exercised without question for years, would

seem to indicate that the defect in this act was not discovered, or known, prior to the commencement of the action in the supreme court, in which action this act of the legislature was declared unconstitutional and void.

The plaintiff in error, defendant below, claims that School District No. 58 could not have been a *de facto* organization, or school district, because, as it claims, there was no law in existence under which it could have been organized, or could have a legal and valid existence. This we think is a mistake. It was organized under the general laws of the state authorizing the creation and organization of school districts; (Laws of 1876, ch. 122, art. 3; Comp. Laws of 1879, p. 824, *et seq.;*) and every act that was done or performed with reference to the organization of this school district, was done and performed under valid and existing laws. The school district was not organized under the act changing the boundaries of Stafford and Barton counties, for that act made no provision for the organization or creation of school districts. That act said nothing with reference to school districts. But the school district was really and in fact organized and created under said chapter 122, art. 3, of the Laws of 1876, and the bonds were voted and issued under valid and existing laws, and the school-fund commissioners purchased the same under valid and existing laws.

It has been suggested, however, that the most difficult question for the defendent in error (plaintiff below) to overcome, is one growing out of the fact that the territory comprising School District No. 58 was taken from the unorganized county of Stafford before the bonds were voted or issued, and was returned again to the unorganized county of Stafford after the bonds were so voted and issued; and that no statute then existed authorizing the creation or organization of school districts in unorganized counties. In other words, that the School District No. 58 was created and organized and the bonds were voted and issued, while the territory of such school district belonged, in legal contemplation, to an unorganized county, and while there was in fact no statute author-

izing the creation or organization of a school district in an unorganized county. If this were so, it might be asked, Can there be a *de facto* school district in an unorganized county, when there is no law authorizing the organization or creation of any school district in such unorganized county? This would certainly be a 'very difficult question if in fact there was such an omission in the statutes as has been suggested; but, under the circumstances of this case, we would still think that the question might perhaps be answered in the affirmative. A school district is not necessarily or really a school district of any particular county, but it is more properly a school district of the state. There is no inexorable necessity or inherent reason why a school district should exist only in an organized county. There is no reason in the nature of things why it might not exist in several counties, as is often the case; or why it might not exist in an unorganized county, or indeed, outside of any and every organized or unorganized as well as in an organized county. This very case shows that a school district can in fact be created and organized in an unorganized county; and a school district *in fact* is properly a school district *de facto*, although it may not, in legal contemplation, be a school district *de jure;* and all the acts and doings of a corporation *de facto* must be treated as legal and valid as to third persons, unless there is something more to make such acts or doings illegal or invalid than the mere fact that the corporation is not a corporation *de jure.* But it is not true that there is no statute authorizing the creation or organization of a school district in an unorganized county; for certainly §§ 31 and 32 of chapter 72 of the Laws of 1873, by the clearest implication, if not in positive terms, authorize the creation and organization of school districts in unorganized counties. ( Comp. Laws of 1879, pp. 270, 271.) This statute provides for the appointment of a deputy county superintendent for the unorganized county by the county commissioners of the county to which the unorganized county is attached for judicial purposes; and also provides that all school districts in such unorganized county shall be separately described

and numbered. In the present case, Stafford county was attached to Pawnee county for judicial purposes; (Laws of 1874, ch. 67, §2; Comp. Laws of 1879, p. 323;) and the county commissioners of Pawnee county evidently had the authority to appoint a deputy county superintendent for Stafford county, who, with the people of such county, might have created and oranized school districts in Stafford county, the same as though such county had been duly organized. It is true, that the present school district was not so created or organized, and therefore that at the time of its creation and organization it was not a school district *de jure;* but as before stated, it was unquestionably a school district *de facto.* It is true that it was not created and organized by a deputy county superintendent of Stafford county appointed by the county commissioners of Pawnee county, acting in conjunction with the people of such district, but it was in fact created and organized by the county superintendent of Barton county, acting in conjunction with the people of such district, and therefore its creation and organization were irregular in point of law; but, except for this irregularity, it was created and organized in strict conformity to all the requirements of law, and to all the forms of law, and from the begining to the end was created and organized by persons authorized to create and organize school districts. The act of the legislature attempting to change the boundaries of Stafford and Barton counties was passed by a body of men legally authorized to change the boundaries of counties; the district was created and organized by men authorized by law to create and organize school districts; the people of the district had a right to have the district created and organized at the time when it was created and organized, and out of the very territory out of which it was created 'and organized, and without waiting for the organization of Stafford county; and the district was created and organized by these people acting in conjunction with the county superintendent of Barton county, who had authority within his own jurisdiction (and the territory out of which this school district was created and organized was, *in fact* though not in

law, within his jurisdiction) to act in the creation and organization of school districts; and the district was afterward recognized as a legal and valid school district by all persons having dealings with the district, and by persons authorized by law to deal with and to recognize the validity and legal existence of school districts; and this *de facto* organization of the district was not annulled or abrogated when its territory was set back into Stafford county, but its organization was preserved and made valid by ratification, and by the recognition of all persons having dealings with it; and Stafford county was immediately afterward organized as a county, and it included within its boundaries this school district now in controversy.

Under all the circumstances of this case, we think it must be held that School District No. 58 was a school district *de facto*,

School district de facto, not de jure; valid bonds.

and that its acts are binding upon the district and upon third persons, the same as though it had been a school district *de jure;* and therefore that its bonds were not only valid as against it, but are also valid as against its successor, the present plaintiff in error, defendant below.

In addition to the authorities already cited, we would refer to the following authorities, cited by counsel for defendant in error: *Thompson v. Abbott,* 61 Mo. 176; *Scaine v. Bellville,* 39 N. J. L. (10 Vroom), 526; *Broughton v. Pensacola,* 93 U. S. 266; *Town of Depere v. Town of Bellevue,* 31 Wis. 120, 125; *Morgan v. Beloit,* 74 U. S. 613; *Beloit v. Morgan,* id. 619; *Von Hoffman v. City of Quincy,* 71 U. S. 535, 555; *Mills v. Gleason,* 11 Wis. 470.

The judgment of the court below will be affirmed.

All the Justices concurring.