A. G. CARPENTER, *as Treasurer of Johnson County*, v. JOHN HINDMAN.

1. COUNTY DEBT; *Re-funding; Limit.* Under the first section of the act of the legislature passed March 8, 1879, entitled "An act to enable counties, municipal corporations, the boards of education of any city, and school districts, to re-fund their indebtedness," a county may compromise or re-fund all of its indebtedness existing at the time of the passage of the act, then due or at any time thereafter to become due, and issue bonds of the description mentioned in the section, for an amount for which the compromise may be effected, or the amount necessary to re-fund it, limited only to the actual amount of the indebtedness outstanding.

2. COMPROMISE OF COUNTY DEBT; *Valid Re-funding Bonds.* A board of county commissioners of a county entered into an agreement with M., the holder of a large amount of county indebtedness, for a compromise, at a price agreed upon, to be paid in money on the surrender of the indebtedness. In order to raise the money to effect the compromise the county commissioners entered into an agreement with F. to take the bonds of the county issued under the before-mentioned act, at par, in an amount sufficient to pay the money agreed to be paid on the compromise. The indebtedness so agreed to be compromised was surrendered to the

county and canceled, and the bonds afterward issued and delivered to F., and the consideration therefor paid to M. in payment of the price agreed to be paid him for such indebtedness. *Held*, That the bonds were issued in substantial compliance with the statute before mentioned, and are valid in the hands of F. or any other holder of them.

*Error from Johnson District Court.*

INJUNCTION, brought by *Hindman* against *Carpenter*, as treasurer of Johnson county, to restrain the collection of a certain tax. Judgment for plaintiff at the March Term, 1884. The defendant brings the case to this court. The facts are stated in the opinion.

*John T. Little*, county attorney, *A. Smith Devenney, John W. Day*, and *James A. Troutman*, for plaintiff in error.

*J. P. Hindman*, for defendant in error.

The opinion of the court was delivered by

HURD, J.: On the 8th day of March, 1879, the legislature passed an act entitled "An act to enable counties, municipal corporations, the boards of education of any city, and school districts, to re-fund their indebtedness," (Laws of 1879, page 80,) the first section of which is as follows:

"SECTION 1. That every county, every city of the first, second or third class, the board of education of any city, every township and every school district, is hereby authorized and empowered to compromise and re-fund its matured and maturing indebtedness of every kind and description whatsoever, upon such terms as can be agreed upon, and to issue new bonds, with semi-annual interest coupons attached, in payment for any sums so compromised; which bonds shall be issued at not less than par, shall not be for a longer period than thirty years, shall not exceed in amount the actual amount of outstanding indebtedness, and shall not draw a greater interest than six per cent. per annum."

The third section of which is as follows:

"SEC. 3. When a compromise has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon to the holder of such indebtedness, in the manner prescribed in this act; but no bonds shall be issued

under this act until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation: *Provided*, That no compromise by any township or school district shall be of any validity unless assented to by the legal voters of such township or school district, at an election or school meeting called for such purpose; of which election or school meeting at least ten days' notice shall be given."

At the time of the passage of this act, Johnson county was indebted for and on account of bonds issued to railroad companies, some past due, and in judgments against the county, and others past due which had not been sued, and others which would not become due and payable for several years thereafter. In the winter and spring of 1881, the board of county commissioners undertook to compromise and re-fund such indebtedness under the act aforesaid. The holders of such indebtedness refused to receive new bonds of the county in settlement, but were willing to compromise it for money. The commissioners entered into agreements with W. R. Osborne, the Municipal Security Company, and other parties in New York, owners and holders of bonds, some of which were due and some of which would not be due for many years, and judgments, amounting in the aggregate to more than $72,000, to compromise such bonds and judgments at the price of $72,000, to be paid in money on the surrender and discharge of such indebtedness.

For the purpose of compromising such indebtedness, George O. Marcy & Co., of Chicago, proposed to purchase from the county its bonds to be issued under and pursuant to the act aforesaid, in the sum of $72,000, and to pay therefor par, and one-fourth of one per cent. premium, which proposition was accepted by the county commissioners. They then caused to be issued, in conformity to the act aforesaid, seventy-two bonds of the county, with semi-annual interest coupons attached, payable to George O. Marcy & Co. or bearer, each in the sum of one thousand dollars; and afterward, and about July 1, 1881, delivered them to the payees. A portion of the bonds and judgments so agreed to be compromised were then in the hands of Marcy & Co., and before the delivery of the bonds

to them were returned to the agent of the county and can-
celed, and the remainder of the price of the bonds was paid
in money.    Immediately thereafter the county paid the money
so received to the persons aforesaid whose claims were not in
the hands of Marcy & Co., and took up and canceled the
indebtedness held by them.

The Kansas City, Fort Scott & Gulf railroad company
was the owner of bonds and judgments against the county,
amounting in the aggregate to more than $95,000, and agreed
with the county commissioners to compromise and settle the
same for the sum of $95,000 in money.    For the purpose of
procuring the money to make this settlement, the county com-
missioners entered into a contract with John Francis, by which
he agreed to purchase the bonds of the county issued under
the act aforesaid, in the amount of $95,000, at par.    The
county commissioners caused ninety-five bonds to be executed
in conformity with the said act, each in the sum of one thou-
sand dollars, with semi-annual interest coupons attached, pay-
able to John Francis or bearer, and caused them to be registered
in the office of the auditor of state; and immediately there-
after the authorized agent of the county, John Francis, payee
in the bonds, and the agent of the railroad company, met in
Kansas City, the indebtedness of the county so agreed to be
compromised was surrendered to the agent of the county and
canceled, and immediately thereafter the ninety-five bonds were
delivered to Francis, and the $95,000 so agreed to be paid
therefor was paid over to the railroad company for the indebt-
edness so compromised and surrendered.

In 1882 a tax of three and one-fourth mills was levied upon
all of the taxable property of Johnson county for the payment
of the interest on the bonds issued to Marcy & Co. and Francis.
The defendant in error (the plaintiff below) was the owner of
real and personal property in Johnson county, subject to taxa-
tion, and a tax was levied thereon for the payment of the in-
terest on the bonds issued to Marcy & Co. and Francis, in the
sum of $6.25.    He refused to pay this tax, and brought this
suit to enjoin its collection, claiming in his petition that the

bonds for the payment of the interest for which the tax was
levied were void, for the reasons : First, that the bonds were
not issued to the holders of the indebtedness compromised, as
provided in the third section of the act, but were issued to
other persons and sold for cash; second, that the county in-
cluded in the compromise, bonds that would not mature for
many years after the passage of the act before mentioned.   A
preliminary injunction was issued by the probate judge of
Johnson county.   On the trial of the cause, after the plaintiff
had introduced his evidence and rested his case, the defendant
demurred to the evidence, on the ground that it did not estab-
lish a cause of action in favor of the plaintiff and against the
defendant.   The court overruled the demurrer.   The defend-
ant elected to stand upon his demurrer, and the court ren-
dered judgment in the cause, adjudging that the bonds so
issued to George O. Marcy & Co. and John Francis, amount-
ing in the aggregate to the sum of $167,000, were issued with-
without warrant or authority of law and are void, and that
the tax levied upon the plaintiff's property for the payment
of the interest on such bonds was illegally levied, and that
he is under no obligation to pay it; and enjoined the defend-
ant, as treasurer of Johnson county, from collecting or at-
tempting to collect such tax.   The defendant excepted to the
overruling of the demurrer and entry of judgment, and made
his case for the supreme court, which contains all the evidence
and proceedings, and brings his petition in error in this court.

    The defendant in error now contends that by the act referred
to, *supra*, a county has no authority to compromise or re-fund
any of its indebtedness, except such as was due at the time of
the passage of the act, or such as should immediately there-
after become due, and that the words "*matured and maturing
indebtedness*" did not include bonds which would not become
due in years thereafter, and that the county commissioners
had no authority to compromise such bonds.

    We cannot assent to this construction.   We hold that under
the first section of the act, all indebtedness of a county, exist-
ing at the time of the passage of the act, then due, or which

might at any time thereafter become due, might be compromised or re-funded under it, and that by the first section ample power and authority is conferred upon the board of county commissioners, not only to compromise the county indebtedness, but to re-fund it, and to issue the bonds of the county for the amount for which a compromise might be effected, or for the amount necessary to re-fund it, limited in amount only to the "actual amount of indebtedness outstanding."

It is contended by the defendant in error, that because the bonds were not issued to the holders of the indebtedness compromised, they are invalid.   As to the ninety-five bonds issued to Francis, the county commissioners had agreed upon a compromise with the holder of more than ninety-five thousand dollars in amount of the indebtedness of the county for that amount to be paid in money.   They caused the bonds to be executed and registered as required by the act.   They agreed with Francis to take the bonds at par.   After the indebtedness was actually canceled and surrendered to the county, the bonds were delivered to Francis and he paid their price to the holders of the indebtedness.   The county obtained its indebtness for the price it agreed to give, before the bonds were issued, and obtained par for its bonds, and in all respects the transaction was in compliance with the act, except that the bonds were delivered to Francis instead of the holder of the indebtedness.

In our view of the matter, the transaction was substantially the same as if Francis had purchased the indebtedness from the railroad company, and then received the bonds on the compromise of it, and that the slight irregularity complained of did and does not affect the validity of the bonds in the hands of Francis or anyone else who may be or become the holder of them.

Holding these views, then we must hold that so much of the tax sought to be enjoined as was levied to pay the interest on the ninety-five bonds issued to Francis, was legal and valid, and that the court below erred in adjudging such bonds void

and enjoining the collection of the tax levied to pay the interest on them. Then it follows that the demurrer to the evidence was improperly overruled.

As regards the validity of the seventy-two bonds issued to George O. Marcy & Co., we express no opinion further than to say, that as they were such bonds as the county of Johnson was authorized to issue, we think they would be valid in the hands of a *bona fide* holder, if not in the hands of the payees. The most that can be urged against them is, not that they were · issued without consideration, or that the county was damaged or defrauded by their issue, but that they were irregularly issued. The purpose of the act under consideration was to provide a way by which counties and municipal corporations oppressed with debt might be relieved and benefited, and a transaction for such purpose, fairly made, but irregular in some particulars, by which the provisions of that act are substantially complied with, and the debtor has received all the act contemplated should be received, ought to be upheld.

The question here arises, Can an injunction be sustained with the parties only, now before the court? It is a well-settled rule in equity that a final injunction will not be issued until all persons interested in the subject-matter and the results, or who may be affected, are made parties to the suit. (*Wiser v. Blackly*, 1 Johns. Ch. 438.)

This court, in the case of *The State v. Anderson, Treasurer*, 5 Kas. 90, holds: "That a final injunction will not be granted until all parties whose legal rights are to be directly affected by it are made parties to the action."

The defendant below, as treasurer of Johnson county, had and has no interest in the suit, and was simply the agent of the county to receive the taxes levied and pay the money received to the persons or parties entitled to it. The real parties affected and to be affected were the holders of the bonds for the payment of the interest of which the tax was levied. If the tax was collected they would be benefited by it, and if the collection of the taxes were enjoined they were the only parties who would suffer. They were the real parties in in-

terest.    Seventy-two of the bonds in question were issued to
George O. Marcy & Co., and if they are still the holders of
the bonds they are proper parties to the suit.

The judgment is reversed, with instructions to the court
below to grant a new trial, and to vacate and set aside the
preliminary injunction issued in the cause.

All the Justices concurring.