## LEWIS A. RILEY v. THE TOWNSHIP OF GARFIELD, IN FINNEY COUNTY, *et al.*

1. MANDAMUS—*Collection of Tax—Application of Bondholder.* Where there is a duty to levy and collect a special tax to pay a special class of debts, or the interest thereon—as, for example, county or township refunding bonds—and there is no valid defense alleged, and no question is made as to the genuineness of the bonds or coupons, and they are owned and in the possession of a *bona fide* purchaser, the court may grant a peremptory writ of *mandamus*, at the instance of the purchaser, to compel the proper officers to levy and collect such tax prior to a judgment at law upon the bonds against the county or township.

2. GARFIELD COUNTY BONDS, *Valid in the Hands of Bona Fide Holders.* Although the original organization of Garfield county was without authority from the constitution, as it contained an area of less than 432 square miles by actual survey, yet, as the statute creating the county did not show that its area was less than 432 square miles, and as it was not void upon its face, and as the county had a *de facto* organization, and as the records of such organization appear regular and valid, and as the state officials proclaimed the organization, and as its validity was subsequently recognized by them and the legislature, all of the bonds issued by Garfield county under the provisions of the statute and in regular form, while its organization as a county was in existence, are valid obligations in the hands of *bona fide* purchasers.

3. GARFIELD TOWNSHIP—*Liability for Valid Debts.* The township of Garfield, in Finney county, is, as a public municipal corporation, the legal successor of Garfield county, and therefore is liable for the valid debts created by that county during its *de facto* organization or existence. (Laws of 1893, ch. 98; *The State, ex rel., v. Comm'rs of Garfield Co.*, ante, p. 372.)

4. STATUTE—*Prospective Operation—Refunding Debts.* Chapter 50, Laws of 1879, permitting counties, townships, etc., to refund their indebtedness, is prospective in its operation; and, under the provisions of the act, a county is authorized to refund its matured and maturing indebtedness of every kind and description whatsoever, whether such indebtedness was created before or after the passage of said chapter 50.

### Original Proceeding in Mandamus.

ON the 20th of August, 1894, Lewis A. Riley filed his application in this court, duly supported by affidavit, for a writ

of *mandamus* to compel a levy on the taxable property of the township of Garfield, of Finney county, sufficient in amount to pay the matured and maturing interest coupons of certain refunding bonds of Garfield county owned by him, and also a levy to create a sinking fund for the payment of the principal of the bonds.    Thereupon, an alternative writ of *mandamus* was issued, which alleged, among other things:

"That subsequently to the registration of the refunding bonds of Garfield county, Riley became, and ever since has been, and still. is, the *bona fide* owner and holder of five of said bonds, namely, bonds No. 33, No. 34, No. 35, No. 36, and No. 37, each of which was and is for the principal sum of $200, except bond No. 37, which was and is for the principal sum of $310, and that to each of the bonds owned and held by plaintiff as aforesaid there were attached 60 semiannual interest coupons, payable, respectively, on the 1st of January and the 1st of July in each year from and after the date of said bonds; that each of the coupons attached to bonds numbered 33, 34, 35 and 36 was for the sum of $6, and that each of the coupons attached to bond No. 37 was for the sum of $9.30; that no interest has been paid on any of said bonds or coupons owned and held by plaintiff since the 1st of January, 1892, and that there was due and owing to plaintiff, on the 1st day of July, 1894, on interest coupons which have matured since January, 1892, the aggregate sum of $166.50; . that he has presented said past-due coupons at the fiscal agency of the state of Kansas at the city of New York, where the same were made payable, and demanded payment thereof, and that payment was refused; that by chapter 98 of the Laws of Kansas passed in the year 1893, which chapter took effect on the 18th of March, 1893, the territory theretofore comprising the county of Garfield (and the whole thereof) was made one municipal township of Finney county, by the name of 'Garfield township,' whereby the territory previously known as a body corporate and politic by the name of 'Garfield county' became a body politic and corporate by the name and style of 'Garfield township,' by which latter name it ever since has been and still is known and recognized, and that by the terms and provisions of said chapter 98 of the Laws of 1893 the territory constituting said Garfield township was not in anywise to become liable for any of the indebtedness theretofore existing against Finney county, nor was Finney

county in anywise to become liable for the indebtedness theretofore created by and existing against the organization known as Garfield county; that none of the refunding bonds so owned and held by said Lewis A. Riley have been paid in whole or in part, and that no interest has been paid on either of said bonds or on the coupons thereto attached since the 1st day of January, 1892; and that by reason of the premises the indebtedness created by Garfield county as aforesaid, and evidenced by said refunding bonds, has become and is an indebtedness against said township of Garfield.

"And whereas, it has been made to appear that said township of Garfield, notwithstanding the premises, designing and intending to repudiate the indebtedness created as aforesaid, and existing against said county of Garfield at the time of the taking effect of chapter 98 of the Laws of 1893, hereinbefore referred to, neglected and refused to levy or cause to be levied a tax upon the taxable property situated and being in said township, in the year 1893, for the purpose of paying the matured and maturing interest coupons on said refunding bonds so owned by said Lewis A. Riley; that said Riley, having been advised that the township officers of said Garfield township were claiming that the bonds issued by Garfield county were not legal obligations against Garfield township, and that it was their purpose to repudiate the payment thereof, in July 1894, caused a notice and request to be duly served on W. S. Johnson, the trustee of said township of Garfield, and a like notice to be duly served on E. L. Hall, chairman of the board of county commissioners of Finney county, and also on H. L. Wolfe and Charles Mc-Fadden, the other members of said board of commissioners, requesting said trustee to levy a tax as authorized by law on the taxable property of said Garfield township for the purpose of paying the matured and maturing interest coupons of said refunding bonds, and requesting said commissioners, as the board of county commissioners of said Finney county, to meet with said trustee at the July session, 1894, of said board, and advise and concur with said trustee in making the levy of taxes, as aforesaid, and that if said township trustee should fail to concur with said board of county commissioners, then that said county board should levy said taxes, as by law they are authorized to do."

The writ concluded as follows:

"Now, therefore, we, being willing that speedy justice shall

be done in the premises, do command and enjoin you, the said W. S. Johnson, as trustee of said township of Garfield, and you, the said E. L. Hall, H. L. Wolfe, and Charles McFadden, as county commissioners, and as being and constituting the board of county commissioners of said Finney county, that upon the receipt of this writ, and on Saturday the 1st day of September, 1894, at 10 o'clock A. M. of that day, you assemble at the office of the county clerk of said Finney county, and that you, the said Hall, Wolfe, and McFadden, convene as the board of county commissioners of said county, and that you, the said Johnson, as trustee as aforesaid, then levy on the taxable property of your said township of Garfield a tax sufficient in amount to pay the matured and maturing interest coupons on the refunding bonds so as aforesaid owned and held by said Lewis A. Riley, and also the necessary tax authorized and required by said chapter 50 of the Laws of 1879 to create a sinking fund for the payment of the principal of said refunding bonds, and that you, the said defendant board of commissioners, then and there advise and concur with said township trustee in making such levies; or, if he shall fail or refuse to attend at the time and place aforesaid, or if he shall fail or refuse to make said levies as herein commanded, or if you, as a county board, and said Johnson, as said township trustee, shall fail to concur in making such levies, then you, the said Hall, Wolfe, and McFadden, as county commissioners as aforesaid, are hereby commanded to forthwith, and at the time and place aforesaid, make the said levies of taxes for the purposes aforesaid, as by the provisions of section 22 of the act relating to townships and township officers you are authorized and required to do; or, in default of doing as you are hereinbefore commanded, you, the said W. S. Johnson, as said township trustee, and you, the said E. L. Hall, H. L. Wolfe, and Charles McFadden, as county commissioners as aforesaid, will show cause, if any you have, before the supreme court of this state, at the supreme court room, in the state capitol, at Topeka, on Friday, the 7th day of September, 1894, why you have not done as herein commanded and required; and have you then and there this writ, with your return thereon."

The alternative writ of *mandamus* was served on the defendants on the 22d and 23d of August, 1894. On the 7th of September, the defendants filed their motion to quash the

alternative writ, which motion, after the title thereof, is as fol-
lows:

"The defendants in the above-entitled action hereby sev-
erally ask the court to quash the alternative writ of *manda-
mus* heretofore issued herein, for the reason that such writ
fails to state facts sufficient to entitle the plaintiff to the re-
lief asked."

Afterward the parties entered into a written stipulation re-
specting the area of Garfield county, which stipulation, after
the title thereof, is as follows:

"This court having found and determined, on 7th March,
1893, in action No. 8107 in this court, wherein The State, *ex
rel.*, was plaintiff, and Thomas Rowe and others, as officers of
Garfield county, were defendants, that Garfield county, as
created by § 6 of chapter 81 of the Laws of 1887, and as con-
stituted at the time of the making of such decision, contained
less than 432 square miles, namely, only $430\frac{1}{2}$ square miles,
it is now stipulated by and between the parties to this pro-
ceeding, for the purpose of the motion filed herein by defend-
ants on 7th September 1894, to quash the alternative writ of
*mandamus*, and for all questions and purposes herein, down
to and including final judgment, that said county of Garfield,
during all the time of its existence as an organized county,
contained only $430\frac{1}{2}$ square miles; and this admission shall
be held and taken to have the same force and effect as if the
same had been set forth or stated in said alternative writ of
*mandamus.*          W. C. WEBB, *Attorney for Plaintiff.*
                    J. W. PARKER AND H. F. MASON,
                              *Attorneys for Defendant."*

The motion to quash is urged upon the following grounds:

"1. The writ shows on its face that the validity of the ob-
ligations to enforce which a peremptory writ is sought is de-
nied. Plaintiff should therefore be required to reduce his
claim to a judgment by an ordinary action at law before ap-
plying for a writ to compel payment.

"2. The writ, coupled with the stipulation on file, shows
that the purported corporation issuing the bonds sued upon
had no legal existence. There is, therefore, a failure to show
any valid obligation to enforce.

"3. The present action is obviously framed upon the
hypothesis that Garfield township is the successor of Garfield

county, and held for the payment of its obligations. The facts alleged do not sustain this theory."

A fourth ground which defendants urge against the sufficiency of the alternative writ "is, that the bonds relied upon by plaintiff were not authorized by the statute under which they purport to have been issued."

The opinion herein was filed December 8, 1894.

*W. C. Webb*, for plaintiff.

*Parker & Hamilton*, and *H. F. Mason*, for defendants.

The opinion of the court was delivered by

HORTON, C. J.: It is conceded that when the duty to levy and collect a special tax to pay a special class of debts, or the interest thereon — as, for example, county or township refunding bonds — is so clear and imperative as to admit of no doubt, the court may grant *mandamus* to compel the levy of a special tax to pay the bonds, or the interest coupons thereof, before they are reduced to judgment. (2 Dill. Mun. Corp. 853; High, Ex. Leg. Rem., §§ 338, 339.)

I. It is insisted, however, that the validity of the bonds recited in the alternative writ is questioned. The writ alleges that the bonds were duly issued by the proper officers of Garfield county at a time when that county was transacting all the usual and ordinary business of an organized county in this state. A copy of one of the bonds and a copy of one of the coupons mentioned in the writ are annexed to the original application. The bonds are alleged to have been issued in accordance with the provisions of chapter 50, Laws of 1879, approved March 8, 1879, and are regular on their face.

The writ is challenged by a motion to quash. All of its allegations are thereby admitted. No facts are alleged by return or answer affecting the validity of the bonds. It is true that the writ alleges that the township of Garfield, designing and intending to repudiate the indebtedness created by Garfield county, and existing against that county at the time of the taking effect of chapter 98 of the Laws of 1893,

has neglected and refused to levy or cause to be levied a tax upon the taxable property of the township for the purpose of paying the matured and maturing interest coupons of the refunding bonds, claiming that the bonds were not legal obligations against the township. But all of this is stated for the purpose of showing the necessity of the issuance of a writ of *mandamus* to compel the levy prayed for. As the alternative writ does not allege or suggest that any bond or coupon is invalid or insufficient, it cannot be said the writ shows on its face that the validity of the obligations to enforce which the *mandamus* is sought is denied. It is true that questions of law affecting the validity of the bonds are raised by the motion to quash; but these questions can be disposed of in this proceeding as well, and perhaps better, than in an action to obtain a judgment at law upon the bonds. We think there is nothing in this ruling contrary to the prior decisions of this court. Of course, *mandamus* will not issue to pay interest upon bonds when various questions, both of law and of material facts, affecting their validity, are raised. (14 Am. & Eng. Encyc. of Law, 190; *Simmons v. Davis*, 25 Atl. Rep. [R. I.] 691; *Bailey v. Lawrence Co.*, 51 N. W. Rep. [S. D.] 331.)

II. It is next insisted that, as Garfield county was organized with an area of only 430½ square miles, and contained an area less than 432 square miles, its organization was void, and therefore that it never had any legal existence as a county, and that it had no power to issue any refunding or other bonds. Garfield county was created by an act of the legislature in 1887, (Laws of 1887, ch. 81, § 6.) The bonds and coupons recited in the application and alternative writ were issued the 29th of July, 1889. On the 7th of March, 1893, this court dissolved Garfield county, because it contained less than 432 square miles. (*The State, ex rel., v. Comm'rs of Garfield Co.*, ante, p. 372.) But the statute organizing Garfield county was not void upon its face. The dissolution by this court was upon evidence introduced to establish its true area. For more than five years prior to the 7th of March, 1893, all the

departments of the state government recognized Garfield county as legally organized. The legislature defined its boundaries, fixed its name, and declared the territory lying within its boundaries to be "the county of Garfield." The governor, acting under general laws providing for the organization of new counties, recognized the act creating the county as valid, and proceeded to the organization of the county. He issued an official proclamation declaring "Garfield county" duly organized as a county of the state. He appointed commissioners and a clerk for Garfield county.

In 1889, the legislature and governor recognized Garfield county three times — once by placing it in the sixteenth judicial district and making it a part thereof; and again by fixing the terms of the district court to be held in Garfield county; and again by an act declaring all section lines therein to be public highways. (Laws of 1889, pp. 166, 341.) In 1891, the legislature again recognized Garfield county by placing it in and making it a part of the thirty-eighth senatorial district, and also further recognized it by fixing the terms of the district court to be held therein. (Laws of 1891, pp. 12, 183, 184.) At the sessions of the legislature held in the years 1889, 1891, and 1893, the house of representatives recognized Garfield county by admitting to the floor and privileges of the house a "delegate," and at each session both houses united in further recognizing Garfield county, by appropriating money to pay the delegate the same *per diem* and mileage allowed to members of the legislature. (Laws of 1889, pp. 30, 31; Laws of 1891, pp. 49, 50; Laws of 1893, p. 53.) By numerous other acts passed by the legislature and approved by the governor, Garfield county was recognized as legally organized and existing. From the date of the organization of Garfield county to the decision rendered by this court in March, 1893, the chairman of the board of county commissioners and the county clerk of Garfield county had and exercised the same power and authority in issuing refunding bonds of Garfield county under the general laws of this state, as had like officers in other counties in issuing like bonds to refund outstanding indebt-

edness of their counties. Under all these circumstances, we must hold that the county of Garfield was a *de facto* organization, from the time of its creation, in 1887, to its dissolution, on the 7th of March, 1893. As was said in *School District v. The State,* 29 Kas. 57:

"There was nothing, in fact, to put anyone upon inquiry as to the defective character of this organization, because, although in furtherance of justice, the courts uphold the maxim that 'ignorance of law excuses no one,' it is nevertheless true that the unconstitutionality of legislative acts, until they are attacked directly, is often so latent and obscure as not to be discoverable, even by courts of justice, in any casual examination of such acts."

In this instance, the element of unconstitutionality was entirely outside of the act itself, hidden and obscure, and could only be discovered by ascertaining the actual area of the county. Although the original organization of Garfield county was without authority from the constitution, yet, as the statute creating the county was not void upon its face, and as the county had a *de facto* organization, and as the records of such organization appear regular and valid, and as the state officials proclaimed the organization, and as its validity was subsequently recognized by them and the legislature, we must hold that all of the bonds issued by Garfield county under the provisions of the statute and in regular form, while its organization as a county was in existence, are valid obligations in the hands of *bona fide* purchasers. (*School District v. The State,* supra; 2 Beach, Pub. Corp., § 890; *Ashley v. Supervisors,* 8 U. S. C. C. A. 435–468.)

III. It is further insisted, that Garfield township is not the successor of Garfield county. We think otherwise. Chapter 98, Laws of 1893, provides:

"SEC. 1. That the territory hereinafter mentioned, and formerly known as Garfield county, Kansas, is hereby made a municipal township of Finney county, Kansas, to be known as Garfield township.

"SEC. 2. The territory embraced in the foregoing section

shall in nowise become liable for any of the indebtedness heretofore created by Finney county, Kansas.

"SEC. 3. Finney county shall in nowise become liable for the indebtedness heretofore created by the organization known as Garfield county, Kansas."

At the time of the dissolution of Garfield county, this court, in pronouncing judgment, preserved the rights and claims of the creditors of that county. Subsequently the legislature organized Garfield township out of the same territory as Garfield county. (*The State, ex rel., v. Lewelling,* 51 Kas. 562.) "Each organized township in this state shall be a body politic and corporate," etc. (Township Officers' Act, § 1.) A new public corporation was created in the place of the old organization of Garfield county. The new corporation was Garfie'd township. That township is, as a public municipal corporation, the successor of Garfield county.

IV. Finally, it is insisted that the bonds recited in the alternative writ were not authorized by the statute under which they purport to have been issued. That statute is chapter 50, Laws of 1879. It authorizes "every county to refund its matured and maturing indebtedness of every kind and description whatsoever." It is argued that only indebtedness existing at the time of the passage of the act can be refunded. The act not only permits matured indebtedness to be refunded, but also permits maturing indebtedness. It is prospective, not retrospective. It has been construed continuously by all state and county officials to authorize the refunding of any kind of indebtedness, whether prior or subsequent to the passage of the act. We think this construction is warranted by the language of the act. (*Brown v. City of Atchison,* 39 Kas. 37; *Comm'rs of Hodgeman Co. v. Comm'rs of Garfield Co.,* 42 id. 409, 413.) The case of *Carpenter v. Hindman,* 32 Kas. 601, decides that "a county may compromise or refund all of its indebtedness existing at the time of the passage of chapter 50, Laws of 1879, then due or in any time thereafter to become due." But the opinion

handed down in that case does not limit the application of the act to indebtedness existing at the time of its passage.

The motion to quash will be overruled. Defendants, however, will be given 40 days in which to file a further return or answer to the alternative writ.

All the Justices concurring.