Lewis A. Riley v. The Township of Garfield, Finney County, *et al.*

**No. 9932.**

1. Garfield County — *a de facto county until act was declared unconstitutional, and official acts valid as to public.* From the time Garfield County was organized as such until the decision of this court in the case of *The State, ex rel., v. The Commissioners of Garfield County*, declaring the act creating the county unconstitutional, it was a county *de facto*, and the acts of its officers were the acts of *de facto* officers, binding as such, between the people of the county and third parties dealing with them as public officers.

2. Funding Bonds — *under ch. 50, Laws 1879, require no vote of the people.* Chapter 50 of the Laws of 1879 authorized the board of county commissioners of a county to compromise matured and maturing indebtedness of every kind, and to issue bonds in payment for any s ums so compromised; and gave to the board of county commission ers authority to compromise an indebtedness evidenced by valid county warrants and issue bonds in payment therefor, without a vote of the people.

Original proceedings in mandamus.    Opinion filed June 5, 1897. *Peremptory writ allowed.*

*W. C. Webb,* for plaintiff.

*Milton Brown, S. S. Ashbaugh* and *Martin & Little,* for defendants.

Allen, J.    This is an action to compel the Township Trustee of Garfield Township, in Finney County, and the Board of County Commissioners of the county,

to levy a tax to pay the interest coupons, and create a sinking fund for the payment of the principal, of certain refunding bonds issued by the Board of County Commissioners of Garfield County and held by the plaintiff. This case has already been considered on a motion to quash the alternative writ of mandamus, and the decision rendered thereon is reported in 54 Kan. 463. Subsequently, an answer was filed, and the case was heard on the evidence submitted. A very elaborate brief is filed on behalf of the defendants, in which numerous questions are discussed at length. The facts do not differ materially from the averments of the writ, which are sufficiently set forth in the report of the case above referred to.

By section 6 of chapter 81 of the Laws of 1887 (Gen. Stat. 1889, ¶1491), the Legislature attempted to create Garfield County, with boundaries which, if the sections had been full, would have given it an area of 432 square miles. Thereafter, the same proceedings were had as in other cases of the organization of counties, and a full set of county officials was elected, and continued to carry on the county government until the act was declared void by this court, in the case of *The State of Kansas, ex rel. Attorney General, v. Comm'rs Garfield Co.* ( 54 Kan. 372 ), because it was ascertained by a survey ordered by this court that the county contained only 430½ square miles, being 1½ square miles less than the minimum required by the Constitution. It is now shown that the records of the government survey of the lands included within the county, filed in the office of the Auditor of State and other public offices, show that slightly less than 430⅓ square miles were actually included in the county. On this it is argued that the plaintiff was bound to take notice of the facts disclosed by the public records and of the provisions of the Constitution,

and that these together disclosed the invalidity of the attempted county organization.   The government surveys of public lands are rarely strictly accurate. In this case, the survey ordered by this court showed a fraction more included in the territory than would appear by the government survey.   The action of the Legislature in attempting to establish the county carries with it a presumption of validity only to be overthrown by conclusive proof.   The law itself did not disclose the grounds of its invalidity.

In *State v. Carroll* (38 Conn. 449), it was held, after very full consideration, that " the acts of an officer appointed and acting in pursuance of a law are valid as the acts of an officer *de facto*, even though the law be afterward judicially declared unconstitutional."   To the same effect, see *Brown v. O'Connell*, 36 Conn. 432; s. c., 4 Am. Rep. 89; *Commonwealth v. McCombs*, 56 Pa. St. 436.   We are driven to the alternative of holding, either that all of the acts of those who were recognized as public officers of Garfield County, between the time when its organization was proclaimed by the Governor and the time of its dissolution by the judgment of this court, were void, or that they were valid as the acts of officers *de facto*.   The better reason and weight of authority seems to support the latter view, and to make valid the acts of those acting under a law duly passed by the Legislature, performed before the act is declared unconstitutional by a competent tribunal.

1. Garfield a county de facto until act clared unconstitutional.

We shall not attempt to discuss in detail all the questions raised by counsel for the defendant, but shall consider only those matters now urged for the first time and which seem to be important.

The bonds in suit were issued, under chapter 50 of the Laws of 1879, for the purpose of refunding out-

standing county warrants. It is contended that the act does not authorize refunding bonds to be issued to take up county warrants, and that it does not authorize bonds to be issued to take up indebtedness of any kind without a vote of the people ; and, particularly, that such a vote is necessary when an attempt is made to convert non-negotiable warrants into interest-bearing bonds. The language of the statute is very broad. It authorizes a county "to compromise and refund its matured and maturing indebtedness of every kind and description whatsoever." Gen. Stat. 1889, ¶ 464. This language is certainly broad enough to include county warrants. It would be difficult indeed to select words more comprehensive than those contained in the act. In 1891, the section containing the language above quoted was amended by the Legislature so as to authorize the refunding of bonded indebtedness, only. Laws 1891, ch. 163, § 1. This indicates a legislative construction of the act of 1879.

The contention that the refunding act does not authorize warrants to be refunded into bonds without a vote of the people of the county, is also answered by the act itself and section 3 of chapter 25 (¶ 1613 ) of the General Statutes of 1889, relating to counties and county officers, which reads : "The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners."

The refunding act authorizes a county to refund its indebtedness. No vote of the people is required in the case of a county, but the act expressly requires a compromise by a township or school district to be submitted to a vote at an election called
2. Funding bonds require no vote of people. for that purpose. The argument that the compromise is distinct and separate from the refunding, and that the question of refunding must be submitted to the people in every case

and that of the compromise only by townships and school districts, is too nice to be sound.   The compromise and the refunding together constitute but a single transaction.   The long list of special acts cited in the brief shed no light on the case in hand.. The validity of the bonds must be determined under the law authorizing their issuance, not under other acts having no application.   We are unable to perceive any evidence of legislative intent affecting the refunding act of 1879 to be drawn from the numerous special acts cited.

The contention that a law authorizing the board of county commissioners to issue negotiable bonds without a vote of the people ought to be void, may be sustained by very weighty arguments; but, to declare it unconstitutional, some provision must be pointed out, which, either in terms or by necessary implication, makes it so.   It is not contended that power cannot be conferred on counties and municipalities to incur a bonded indebtedness.   The custom of doing so is too well established to admit of a question now as to the existence of the power.   That the Legislature may require a vote of the people as a condition precedent to the action of the board, is well settled; but there is no provision of the Constitution requiring such a vote. The doubt has been whether authority could be conferred on the people to decide such questions at an election.   Section 21, of article 2, (Gen. Stat. 1889, ¶ 139,) of the Constitution reads: "The Legislature may confer upon tribunals transacting the county business of the several counties such powers of local legislation and administration as it shall deem expedient."   Under this, authority is given to delegate legislative powers to the board of county commissioners, and it is upon the board of county commissioners, as the representative of the county, that the

refunding act confers authority to compromise and refund the indebtedness of the county. There is no contention in this case, either that the act under consideration is unconstitutional or that it does not authorize negotiable bonds to be issued. Nor is there any claim that the warrants, for which the refunding bonds forming the basis of this suit were exchanged, were without consideration, fraudulent, or invalid for any reason. The contention is merely that bonds may not be issued to refund county warrants. In this state of the case, we must assume that the warrants were valid, and the bonds issued in exchange for them based on a good consideration.

The question whether Garfield Township is the successor of Garfield County, entitled to its property and liable for its debts, was sufficiently considered on the motion to quash, and needs no further discussion now.

It appears that it is not yet time to commence to raise a sinking fund for the payment of these bonds, and that part of the relief demanded will be denied.

A peremptory writ will be awarded directing a levy on the property included in Garfield Township to pay the interest coupons.

Johnston, J., concurring.

Doster, C. J., not sitting.