BOARD OF COM'RS OF SEWARD COUNTY, KAN., v. ÆTNA LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. October 24, 1898.)

No. 1,054.

1. MUNICIPAL BONDS—ESTOPPEL BY RECITALS—REFUNDING BONDS.

Under the constitution and statutes of Kansas, which vest the board of commissioners of a county with the power to settle and allow claims against it, a recital in bonds issued by a county that they were issued by the county board in accordance with the provisions of a statute authorizing counties to refund their indebtedness is a representation that the debt refunded was just and valid; and, as against an innocent purchaser of such bonds in reliance upon this representation, the county is estopped from denying it for the purpose of defeating their collection.

2. SAME—LEGISLATIVE POWERS.

The power to borrow money, to incur indebtedness, to make contracts, and to issue bonds, on behalf of the people of the state, or on behalf of any political subdivision thereof, are all essentially legislative powers, which it is the province of the legislature to exercise itself, or to delegate to municipal or quasi municipal corporations, to be exercised free from every restriction not expressly imposed by the constitution of the state or the inalienable rights of man.

3. SAME—CONSTITUTIONAL PROVISIONS.

The provision of the constitution of Kansas prohibiting the contracting of any debt by the state, with certain exceptions, unless authorized by a direct vote of the electors, has no application to the debts of counties or municipalities.

4. SAME—POWER TO ISSUE REFUNDING BONDS.

The constitution of Kansas imposes no limitation upon the authority of the legislature to authorize the board of commissioners of a county to refund its indebtedness by the issuance of bonds, but, on the contrary, by providing that the legislature "may confer upon tribunals transacting the business of the several counties such power of local legislation and administration as it shall deem expedient," directly empowers it to authorize such action, which is not the creation of a new debt, but only a matter of fiscal administration.

5. SAME—NATURE OF INDEBTEDNESS REFUNDED.

County warrants are prima facie proof of the validity of the debts they evidence, and afford a legal basis for refunding bonds issued under Laws Kan. 1879, c. 50, authorizing counties to refund their "matured or maturing indebtedness of every kind and description whatever."

6. SAME—CONSTRUCTION OF STATUTES—SPECIAL ACT.

Laws Kan. 1879, c. 50, gave authority to all counties and other municipal subdivisions of the state to refund their indebtedness, without limitation of amount. By an amendment of such law March 9, 1891, it was provided that except for the refunding of outstanding bonds or matured coupons, or judgments thereon, no bonds should thereafter be issued under its provisions where the total bonded indebtedness would thereby exceed 5 per cent. of the assessment of the municipality. The bonded indebtedness alone of Seward county at that time exceeded such limit. By Laws 1893, c. 114, the board of commissioners of Seward county was authorized and empowered "to refund any and all outstand-

ing indebtedness existing on May 1, 1891, and still unpaid." *Held*, that the latter act did not conflict with, nor operate to repeal, the general law, as to Seward county, but merely to except such county from the limitation imposed by the amendment of 1891, so far as it applied to the indebtedness then existing, and to confer upon that county the additional privilege of refunding such indebtedness.

7. SAME—VALIDITY OF SPECIAL ACT.

The latter act is not invalid under the provision of the Kansas constitution prohibiting the enactment of a special law where a general law could be made applicable; the determination of the necessity for special legislation being within the exclusive province of the legislature, under the decisions of the supreme court of the state.

8. CONSTRUCTION OF STATUTES—TWO ACTS ON SAME SUBJECT.

When there are two acts upon the same subject, they must stand together, if possible; if the two are repugnant in any of their provisions, the later act operates as a repeal of the earlier one, so far, and only so far, as its provisions are repugnant to those of the earlier act.

9. SAME—GENERAL AND SPECIAL LAWS.

Privileges granted by special act are not affected by inconsistent general legislation on the same subject, but the special act and general laws must stand together, the one as the law of the particular case, and the other as the general law of the land.

10. SAME.

All statutes in pari materia are to be read and construed together, as if they formed part of the same statute, and were enacted at the same time.

In Error to the Circuit Court of the United States for the District of Kansas.

S. S. Ashbaugh (T. A. Scates, on brief), for plaintiff in error.

O. H. Bentley and Rudolph Hatfield, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. This is a writ of error challenging a judgment which sustained a general demurrer to the answer of the plaintiff in error, the board of county commissioners of Seward county, in the state of Kansas, and granted to the Ætna Life Insurance Company, the defendant in error, the recovery it sought. The action was brought to enforce payment of coupons cut from refunding bonds of Seward county, some of which were issued under chapter 50 of the Laws of Kansas of 1879 (Gen. St. Kan. 1889, par. 464), and others under chapter 114 of the Laws of Kansas of 1893. The pleadings conceded that the defendant in error purchased the bonds and coupons for value before maturity; and, while the answer contains an averment that the insurance company knew the facts on which the various defenses are founded, it is not claimed that it ever had any other notice or knowledge thereof than that with which it is charged by the law, and the existence of the record of the proceedings which resulted in the issue of the bonds. The answer pleads many defenses, but the opinions of this court and those of the supreme court of Kansas contain repeated statements of the reasons why they cannot prevail. It would be an idle task to recite them again here. Suffice it to say, in deference to the zeal and ability of counsel, we have again examined those decisions, only to be confirmed in the views there expressed; and we shall content ourselves in this case with a brief statement of

the propositions on which they rest, and a reference to the cases in which they were rendered.

1. The bonds from which these coupons were cut were issued to refund debts evidenced by county warrants, and one defense is the customary one in cases of this kind, that the—

"County warrants were utterly null and void, and had been issued contrary to law, and for purposes not authorized by law, and never have been, and were not then, a legal indebtedness against said county."

The General Statutes of Kansas provide that:

"The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners." "The board of county commissioners of each county shall have power at any meeting * * * second, to examine and settle and allow all accounts chargeable against the county; and when so settled they may issue orders therefor as provided by law." Gen. St. Kan. 1889, pars. 1613, 1630.

The acts of the legislature of Kansas under which these bonds were issued authorized the county to refund its indebtedness. Each of the bonds contained a recital of the refunding act, and a certificate to the effect that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds had been properly done, had happened, and had been performed in regular and due form as required by law. Each bond recited that the board of county commissioners of Seward county had caused it to be signed by its chairman, and to be attested and registered by the county clerk, and it was so signed, attested, and registered. Under the statutes referred to, the power was vested in and the duty was imposed upon the board of county commissioners to ascertain and decide whether or not the warrants refunded evidenced a valid debt before they issued these bonds. The issue of the bonds was a representation by the county to all the world that the debt refunded was just and valid, and, when an innocent purchaser had paid for these bonds in reliance upon this representation, the county was estopped from denying it for the purpose of defeating their collection. "A municipal corporation is estopped from defending an action by an innocent purchaser to collect its negotiable bonds, which recite that they were issued for the purpose of funding the bonds, warrants, or floating debt of the corporation, either on the ground that the warrants or bonds which they were issued to satisfy were void, or that the apparent debt which they were issued to pay was fictitious." City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272, 275, 277; National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 10 C. C. A. 637, 644, 62 Fed. 778, 785, and 27 U. S. App. 244, 255; West Plains Tp. v. Sage, 16 C. C. A. 553, 557, 69 Fed. 943, 946, and 32 U. S. App. 725, 733; Board v. Howard, 27 C. C. A. 531, 533, 83 Fed. 296, 298, and 49 U. S. App. 642, 645; Jasper Co. v. Ballou, 103 U. S. 745, 752; Commissioners v. Beal, 113 U. S. 227, 240, 5 Sup. Ct. 433; Cairo v. Zane, 149 U. S. 122, 137, 13 Sup. Ct. 803; Ashley v. Board, 8 C. C. A. 455, 466, 60 Fed. 55, 66, and 16 U. S. App. 656, 675; City of Cadillac v. Woonsocket Sav. Inst., 7 C. C. A. 574, 578, 58 Fed. 935, 939, and 16 U. S. App. 546, 558. For all the purposes of this case, therefore,

the debts evidenced and refunded by these bonds must be deemed to have been the just obligations of the county.

2. Another defense urged is that all the bonds and coupons were void because they were issued without a vote of the electors of the county. The syllogism is: The debts refunded were fictitious, and did not bind the county. The legislature had no power, under the constitution, to create a debt of the county without a vote of its electors. Therefore the refunding bonds by which the legislature attempted to create such a debt were issued without authority, and are void. The argument fails because the major premise is untrue. The county is estopped from contending that the debts refunded were invalid, and for all the purposes of this action they were legal and binding obligations of the corporation. Moreover, the legislature did not issue, and did not attempt to issue, these refunding bonds. It merely permitted the county itself to do so, through the agency of that board, by whose action alone it can exercise any of the powers of a body politic or corporate under the system of government adopted by the state of Kansas. Const. Kan. art. 2, § 21; Gen. St. Kan. 1889, par. 1613. It is to this board that the legislature of Kansas has committed the duty of making contracts, of levying taxes, and of auditing and allowing the obligations of the county. Why can it not also intrust it with the authority to change the debts it allows, from warrants to bonds? The answer of counsel for the county is that it cannot do so because the constitution of Kansas contains these provisions:

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature which may not be altered, revoked, or repealed by the same body, and this power shall be exercised by no other tribunal or agency." "This enumeration of rights shall not be construed to impair or deny others retained by the people." Bill of Rights, §§ 2, 20. "No debt shall be contracted by the state except as herein provided, unless the proposed law for creating such debt shall first be submitted to a direct vote of the electors of the state at some general election; and if such proposed law shall be ratified by a majority of all the votes cast at such general election, then it shall be the duty of the legislature next after such election to enact such law and create such debt, subject to all the provisions and restrictions provided in the preceding section of this article." Article 11, § 6. "The legislature may confer upon tribunals transacting the county business of the several counties, such power of local legislation and administration as it shall deem expedient." Article 2, § 21.

There is, however, no restriction here upon the power of the legislature to authorize a board of county commissioners, or any other agents it may select, to refund the debts of a county. The limitation found in section 6 of article 11 is expressly confined to debts of the state, and has no possible reference to those of municipal or quasi municipal corporations. On the other hand, the express grant of authority to the legislature to confer upon the county boards such powers of local legislation and administration as it shall deem expedient, by section 21 of article 2, is clear and full, and the exchange of county warrants or any other evidences of debt for county bonds is nothing but an act of fiscal administration. Even if it were more,

the power to levy taxes upon any of the property of the state, to build school houses, roads, court houses, and to make other public improvements at the expense of the people; the power to borrow money, to incur indebtedness, to make contracts, to issue bonds on behalf of the people of the state, or on behalf of any political subdivision thereof,— all these are essentially legislative powers, which it is the province of the representatives of the people assembled in the legislature to exercise themselves, or to delegate to municipal or quasi municipal corporations, to be exercised free from every restriction not expressly imposed by the constitution of the state, or the inalienable rights of man. The constitution of Kansas imposed no limitation upon the authority of the legislature of that state to refund the debts of the county of Seward, or upon its power to authorize the board of county commissioners of that county to do so, and the acts of that board in refunding the debts of that county without a vote of its electors were neither unconstitutional nor invalid. Travelers' Ins. Co. v. Oswego Tp., 7 C. C. A. 669, 678, 59 Fed. 58, 66, 67, and 19 U. S. App. 321, 335, and cases there cited; Board v. Howard, 27 C. C. A. 531, 534, 83 Fed. 296, 299, and 49 U. S. App. 642, 646; Riley v. Garfield Tp. (Kan. Sup.) 49 Pac. 85; Id., 54 Kan. 463, 38 Pac. 560.

3. It is contended that the bonds issued under chapter 50 of the Laws of 1879 are void because the act did not authorize the refunding of county warrants. County warrants are prima facie proof of the validity of the debts they evidence. Speer v. Board, 32 C. C. A. 101, 88 Fed. 749, 756; Wall v. Monroe Co., 103 U. S. 74, 77; Thompson v. Searcy Co., 6 C. C. A. 674, 679, 57 Fed. 1030, 1036, and 12 U. S. App. 618, 627; Board v. Sherwood, 11 C. C. A. 507, 511, 64 Fed. 103, 107, and 27 U. S. App. 458, 464; Commissioners v. Keller, 6 Kan. 511, 523. And the plaintiff in error is estopped by the issue of the bonds and the recitals they contain from questioning the legality of the debts refunded by them. Chapter 50 of the Laws of 1879 provides:

"That every county * * * is hereby authorized and empowered to compromise and refund its matured and maturing indebtedness of every kind and description whatsoever, upon such terms as can be agreed upon, and to issue new bonds with semi-annual interest coupons attached in payment of any sums so compromised."

The debts refunded were either matured or maturing debts of some kind or description, and were therefore expressly included in the terms of the act, whether they were evidenced by bonds, judgments, warrants, or simple contracts. Board v. Howard, 27 C. C. A. 531, 534, 83 Fed. 296, 299, and 49 U. S. App. 642, 646; Riley v. Garfield Tp. (Kan. Sup.) 49 Pac. 85; Id., 54 Kan. 463, 38 Pac. 560.

4. It is claimed that the bonds issued under chapter 114 of the Laws of 1893 are void because the bonded indebtedness of Seward county was in excess of the limitation prescribed by section 2 of chapter 163 of the Laws of 1891 when they were issued. This was the state of the case when the act of 1893 was passed, and when these bonds were issued under it: In 1879 the legislature of Kansas had enacted a general law, applicable to every county, every city, every township, and every school district in the state, which au-

thorized them to refund their debts, and to issue bonds therefor, without any limitation of the amount. Chapter 50 of the Laws of 1879 (Gen. St. Kan. 1889, par. 464). In 1891 the legislature amended that law by adding this proviso:

"And provided further, that except for the refunding of outstanding bonds or matured coupons thereof, or judgments thereon, no bonds of any class or description shall hereafter be issued where the total bonded indebtedness of such county or township would thereby exceed five per cent. of the assessment for taxation as shown by the last finding and determination by the proper board of equalization." Laws 1891, c. 163, § 2.

The bonded indebtedness of Seward county exceeded 5 per cent. of its assessed valuation, so that under this amendment it could not refund any part of its debt that was not already evidenced by bonds or coupons. Thereupon the legislature passed chapter 114 of the Laws of 1893, which is a special law, entitled "An act authorizing Seward county, Kansas, to refund its outstanding indebtedness existing on May 1st, 1891, and still unpaid," and which provides that:

"The board of county commissioners of Seward county, Kansas, is hereby authorized and empowered to refund any and all outstanding indebtedness existing on May 1st, 1891, and still unpaid by issuing bonds to the holders of such outstanding indebtedness."

This act contains six sections, and prescribes the method in which the bonds shall be issued and paid, and is in itself complete, independent, and effective. The purpose and effect of this enactment are plain, and the terms used to accomplish them are free from all ambiguity. They were to enable Seward county "to refund any and all outstanding indebtedness existing on May 1st, 1891," notwithstanding the limitation of the general law. What the legislature of 1891 could prohibit, the legislature of 1893 could permit, either in whole or in part. The effect of chapter 114 of the Laws of 1893 was to except Seward county from the terms of the limitation of the act of 1891. It did not repeal the general law, nor deprive the county of Seward of any of the powers and privileges granted to it in common with every other county in the state by that law; but it had the effect to confer upon Seward county the additional privilege of refunding all the debts it owed on May 1, 1891, although its bonded indebtedness already exceeded the limitation prescribed by the act of 1891. This conclusion is in accord with the settled rules of construction, that, when there are two acts upon the same subject, they must stand together, if possible; that, if the two are repugnant in any of their provisions, the later act operates as a repeal of the former act, so far, and only so far, as its provisions are repugnant to those of the earlier act (In re Henderson's Tobacco, 11 Wall. 652, 657); that privileges granted by special act are not affected by inconsistent general legislation on the same subject, but the special act and the general laws must stand together, the one as the law of the particular case, and the other as the general law of the land (Gowen v. Harley, 6 C. C. A. 190, 196, 56 Fed. 973, 979, and 12 U. S. App. 574, 584); and that "all statutes in pari materia are to be read and construed together, as if they formed part of the same statute, and were enacted at the same time." Potter, Dwar. St. 145. The bonded indebted-

ness of Seward county was not limited by section 2 of chapter 163 of the Laws of 1891 after the passage of chapter 114 of the Laws of 1893.

5. Finally it is said that the bonds issued under chapter 114 of the Laws of 1893 are void because that act violated section 17 of article 2 of the constitution of Kansas, which provides that:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted."

The argument here is that the enactment of chapter 50 of the Laws of 1879 demonstrates the fact that the legislature found that a general law could be made applicable to this subject, and therefore no special law could be legally passed. But the decision of that question by the legislature of 1879, upon the state of facts then existing, could not deprive the legislature of 1893 of the power to consider and determine whether or not such a law could be justly made to apply to all the counties of the state as they were situated in that year. Chapter 114 of the Laws of 1893 is conclusive evidence that the legislature of that year decided that a general law could not then be fairly made to apply to all the counties of the state, for the obvious reason that the law proper for the other counties prohibited Seward county from refunding any of its debts that were not evidenced by bonds or coupons. Under the decisions of the supreme court of Kansas, it is not, however, material what reason, or whether or not any reason, induced the legislature to enact the special law of 1893. Under the construction which that court has uniformly given to the constitution of Kansas, the determination of the question whether or not a general law may be made applicable to any subject is a purely legislative function, and the enactment of a special law, even when a general law on the same subject is already in force, settles the question, and makes the special act impregnable to attack under this clause of the constitution of that state. Beach v. Leahy, 11 Kan. 28; Commissioners v. Shoemaker, 27 Kan. 77; Washburn v. Commissioners, 37 Kan. 217, 221, 15 Pac. 237; State v. Sanders, 42 Kan. 228, 233, 21 Pac. 1073; Elevator Co. v. Stewart, 50 Kan. 378, 383, 32 Pac. 33; Eichholtz v. Martin, 53 Kan. 486, 488, 36 Pac. 1064; Travelers' Ins. Co. v. Oswego Tp., 7 C. C. A. 669, 673, 59 Fed. 58, 61, and 19 U. S. App. 321, 327; Rathbone v. Board, 27 C. C. A. 477, 481, 83 Fed. 125, 129, and 49 U. S. App. 577, 587.

The judgment below is affirmed.