H. F. WULF *et al.* v. THE CITY OF KANSAS CITY *et al.*

No. 15,706. (94 Pac. 207.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Taxation — Legislative Powers—Municipal Corporations.* Chapter 115 of the Laws of 1907, authorizing and requiring cities having a population of more than 50,000 to have and maintain a system of public parks, parkways and boulevards, and providing for the appointment by the mayor of a board of park commissioners to devise, improve and superintend the same, with authority to issue city bonds and levy taxes therefor, subject to the restrictions contained in the act, is a valid and constitutional enactment, so far as its operation and effect is challenged in this action.

2. ———— *Valid Tax Levy.* The levy of a tax by such board of park commissioners of one-half of a mill on the dollar for general park purposes is a valid exercise of power under such act.

Error from Wyandotte district court; J. McCABE MOORE, judge. Opinion filed February 8, 1908. Affirmed.

*Nathan Cree,* for plaintiffs in error.

*T. A. Pollock,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: The question to be determined is whether chapter 115 of the Laws of 1907, relating to parks and boulevards in cities having a population of more than 50,000, is a valid law sufficient to authorize a tax for a general park fund. The park commissioners of Kansas City, Kan., levied a tax of one-half of a mill on the dollar, under section 9 of that act, to create a general park fund, and the plaintiffs, property owners and taxpayers of such city, sought to enjoin the enforcement of this levy. A demurrer to the answer having been overruled, the plaintiffs seek to have that ruling reversed.

The act provides for the appointment by the mayor, without confirmation, of a board of park commissioners composed of three freeholders, residents of the city, to serve for two, four and six years, respectively, their successors to be appointed for six years. This board is authorized to appoint a clerk, and to employ and discharge engineers, surveyors, attorneys, agents and servants, and to make by-laws. Two members constitute a quorum. It is to make annual reports to the city council; adopt a seal; in the name of the city prosecute and defend suits; create and provide for the payment of debts; draw warrants on the city treasurer; purchase, sell and convey property; make contracts; issue bonds; levy taxes and special assessments; and do all other acts proper or necessary to carry out the provisions of the act, subject to the limitations therein. It may levy taxes, not exceeding one-half of a mill on the dollar, on the taxable property in the city for a general park fund, and the same amount upon the property in any park district for a district fund. It is to devise a system of parks, parkways and boulevards; to select routes and streets for boulevards and parkways,

and cause the same to be opened, widened, improved, and maintained, and to acquire land therefor by purchase or condemnation; and to manage and control such parks, parkways and boulevards. It may issue the bonds of the city, to be paid by a tax on all the property within the city, or within a. park district, as it shall determine, and sell the same. If any issue of bonds or any debt created by the board exceed $5000, the resolution therefor shall be subject to the veto of the city council by vote of two-thirds of all the members thereof. Bonds in excess of $75,000 cannot be issued in any one year, and the amount of bonds cannot, at any time, exceed five per cent. of the assessed value of the taxable property. The bonds and interest thereon are to be paid by taxes levied by such board upon the property of the city or district. It has the power to grade and pave boulevards, to build and repair sidewalks, improve sidewalk spaces and plant trees along the same, and issue bonds and levy assessments therefor. It may, with the approval of the mayor and council, declare any street or part of a street in the city a boulevard or parkway. The act contains regulations to govern the board in carrying out the foregoing and many other provisions.

The petition alleges that the board is proceeding under section 9 of the act to levy a half-mill tax on all property in the city, and this the plaintiffs seek to enjoin. Section 9 is as follows:

"The board of park commissioners of any city are authorized to levy, by resolution of said board, an annual tax on all the taxable property of the city of not to exceed one-half mill on the dollar to create a general park fund to be used by them in carrying out the provisions of this act, and to certify said levy to the county clerk and have the same placed upon the tax-roll and collected as other taxes." (Laws 1907, ch. 115.)

The provision that the commissioners shall hold their offices for six years is in violation of section 2

of article 15 of the constitution. (Gen. Stat. 1901, § 228.) The term of office by the act being unconstitutional, the tenure thereof is not declared, and the office is held subject to the appointing power. (*Lewis v. Lewelling*, 53 Kan. 201, 36 Pac. 351, 23 L. R. A. 510.) This invalid provision does not therefore make the whole act void.

The claims of the plaintiffs, briefly stated, are that the act is void because the legislature had no authority to delegate to the park commissioners the power to incur indebtedness and levy taxes; that all legislative power is vested in the legislature, and cannot, in the absence of an express provision of the constitution, be delegated, except to public municipalities; that this exception rests upon an implied authority, and that the power so delegated can be exercised only by the elective governing body of the municipality. From these propositions is deduced the conclusion that the act giving these powers to the park board is void, unless there is some express constitutional provision authorizing such delegation of power, and that the onus of pointing out such provision is upon the defendants.

The claims of the defendants may be thus summarized: All legislative power is vested in the house of representatives and senate—the legislature. All legislative power having been thus given, none was reserved, except as stated in express provisions of the constitution specifying such limitations or in the federal constitution concerning subjects delegated by the people to the congress. The deduction from this statement is made that the legislative act in question is valid, unless the plaintiffs can specify some express provision of the constitution violated by its terms.

These respective challenges—of the plaintiffs to produce express constitutional warrant for the law, and of the defendants to point out the constitutional provision violated by it—would be relatively unimportant if they were mere exhibitions of strategy in argument, but they go deeper and rest upon a fundamental differ-

ence in constitutional interpretation. The plaintiffs claim that, notwithstanding the grant of power to the legislature, limitations must be implied upon that power beyond the express restrictions of the state and federal constitutions, growing out of the essential nature of free government, and that among these reserved or retained rights is the right of the electors to choose those to ·whom˜ they will entrust the power to create debts and levy taxes to pay them. The defendants reject all reservations not found in the constitution, state or federal, and all restrictions upon legislative power except such inhibitions as arise by necessary implication from some express provision of the constitution itself. The arguments fairly present these conflicting views, which will now be considered, and first with reference to our own decisions.

In *Hines and others v. The City of Leavenworth and others,* 3 Kan. 186, it was declared:

"Article 12 of the constitution treats of corporations. Its various sections are not grants of power to the legislature, but were intended to regulate with reference to corporations the exercise of the general legislative power conferred by a preceding article. . . . Section 5 of article 12 is as follows:

" 'Provision shall be made by general law for the organization of cities, towns and villages, and their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, shall be so restricted as to prevent the abuse of such power.'

"This does not, nor was it intended to, confer upon the legislature power to provide for the creation of municipal corporations, but was intended to regulate the exercise of that power as conferred in the general grant of power." (Pages 198, 199.)

In the same opinion the court said:

"When a law is passed embracing any of the subjects mentioned in the fifth section, it is the duty of the court, when called upon, to determine whether it contains restrictions, and if it does contain them the law must be held to be valid, notwithstanding the members of the court might doubt their sufficiency to prevent abuses. It is a subject wholly under the con-

trol of the political department of the government. Whatever the legislature determines to be a sufficient restriction, if it be a restriction at all, must be final." (Page 204.)

This view was approved in *City of Newton v. Atchison,* 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486, and *Belleville v. Wells,* 74 Kan. 823, 88 Pac. 47. In *Atchison v. Bartholow,* 4 Kan. 124, it was again held that section 5 of article 12 of the constitution was not a grant of power but a restriction upon the powers already granted. The court said:

"The whole of this article is merely restrictive of the general power conferred by section 1 of article 2. It adds nothing to the power of the legislature, nor could it have been so intended. All legislative power upon the subject had already been conferred. It may be true that the legislature, in exercising the power, might have done precisely what this clause requires of it, had it been omitted; but it seems to have been thought expedient to compulsorily restrain its action, and such alone was manifestly the intention of this article." (Page 144.)

Concerning implied restrictions upon legislative powers it was held in *Prouty v. Stover, Lieut. Governor,* 11 Kan. 235:

"Constitutional inhibitions need not always be express. They are equally effective when they arise by implication. To create an implied inhibition there must be some express affirmative provision. The mere silence of the constitution creates no prohibition. To sustain an implied inhibition, the express provision must apply to the exact subject-matter, and the inhibition will not be extended further than necessary to give full force to the provision." (Syllabus.)

This was followed in *In re Holcomb, Petitioner, &c.,* 21 Kan. 628. In *The State, ex rel., v. Hunter,* 38 Kan. 578, 17 Pac. 177, an act providing for the appointment of police commissioners in cities of the first class by the executive council was held valid. This act gave to the commissioners so chosen the power to appoint the police judge, marshal and other police officers, and gave

the board the power to organize, govern and discipline the police force of such cities, as well as the control and management of the property of the police departments.   The court said:

"The point has been made, though not much contended for, that police government by commission is illegal.   In effect, it is said to be opposed to the fundamental theory of self-government, and denies to the people of the district the right to select their own officers from among their own number.   Whatever may be said regarding the policy of placing the police administration of cities in a board of police commissioners who are chosen by state officers rather than through the electors of the cities, there can be no doubt that the legislature has the power to do so.   The constitution imposes no limitations upon the legislature in respect to the agencies through which the police power of the state shall be exercised.   It may be conferred upon the officers of local municipalities chosen by the people resident therein, or, if deemed expedient, it may be vested in officers or persons otherwise selected.   Cities are but agencies of the state, created to aid in the conduct of public affairs.   The functions of cities and their officers are prescribed by the legislature, and it rests in the sovereign discretion of that body to say how much of the police power shall be exerted by the municipality.   Although such power is usually exercised by the local authorities, police administration is not in its nature exclusively local.   The people of the whole state are interested in preserving peace and good order and preventing crime in every city and district of the state, and in protecting the property, health and lives of all its citizens.  .  .  .   A clear and well-recognized distinction exists between these matters which concern the state at large, and those which are of a purely local and corporate character.   In pointing out this distinction, Judge Dillon says that 'the administration of justice, the preservation of the public peace, and the like, although confided to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws proper, the establishment of gas-works, of water-works, the construction of sewers, and the like, are matters which pertain to the municipality as distinguished from the state at large.'   (1 Dill. Mun. Corp. 58.)"   (Pages 581, 582.)

With reference to the claim that the act involved the delegation of legislative power, it was said:

"The constitution confers the lawmaking power upon the house of representatives and the senate, and the power thus vested cannot be surrendered to any other body or person, except as to local administrative legislation, which all agree may be delegated to corporations and tribunals transacting the county business." (Page 583.)

In *City of Emporia v. Smith,* 42 Kan. 433, 22 Pac. 616, it was held that the power given to the legislature by section 21 of article 2 of the constitution (Gen. Stat. 1901, § 139) to confer power of local legislation upon tribunals transacting county business was not exclusive, but that such powers might be conferred on "other local agencies," and the power of the mayor and council to extend the boundaries of the city, in the manner provided by the act in question, was upheld.

Concerning the authority of the legislature over streets and public grounds in cities Mr. Chief Justice Johnston, in *La Harpe v. Gas Co.,* 69 Kan. 97, 76 Pac. 448, said:

"In the control of the streets and highways the power of the legislature is supreme and unlimited, except so far as it may be restricted by constitutional provisions. The general statutes relating to the government of cities generally place the power to lay out and improve streets and public grounds, and to regulate their use, in municipal officers, but that is a power which the state may exercise either directly or through one of its agencies. In placing the control of streets and public grounds in cities, the legislature surrendered none of its own power, nor did it vest any rights in such cities as against the public. A city is a creation of the legislature—a subordinate agency of the state, which exercises only such power as the legislature confers, and for such period of time as the legislature in its discretion determines. The state gives, and the state can take away; and the legislature is at liberty to resume so much of the control of the streets and alleys and public grounds formerly exercised by the city as it deems best, and this without obtaining the consent of

either the officers or the inhabitants of the city."
(Page 103.)

That bonds may be issued by a county and taxes
levied to pay them without any vote of the people,
when such issue is authorized by the legislature, is
settled by the decision in *Riley v. Garfield Township,*
58 Kan. 299, 49 Pac. 85. In the absence of any limita-
tion in the constitution the legislature has power to
make laws and create agencies to carry them into effect.
(*The State v. Railway Co.,* 76 Kan. 467, 92 Pac. 606.
See, also, *The State, ex rel., v. Comm'rs of Shawnee
Co.,* 28 Kan. 431; *The State v. Freeman,* 61 Kan. 90,
58 Pac. 959, 47 L. R. A. 67; *The State v. Atkin,* 64
Kan. 174, 67 Pac. 519, 97 Am. St. Rep. 343.)

We have not overlooked the case of *Comm'rs of
Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416,
cited by plaintiffs. An act of the legislature directed
the improvement of roads upon the petition of resident
landowners within certain limits, and made it the duty
of the county board to apportion two-thirds of the cost
thereof among the tracts benefited and cause assess-
ments to be made thereon to pay the same; and the act
was held invalid. Mr. Chief Justice Horton used the
following language in the opinion:

"Here an important power, namely, that of causing
public improvements, and of levying general taxes on
all of the people, in addition to special assessments on
a portion of them, to pay for such improvements, is
conferred directly upon a class of persons, many of
whom may not be electors. The petitioners are au-
thorized, absolutely and arbitrarily, to fix the bounda-
ries of the taxing district; the nature, extent and cost
of the improvement to be made; and no officer or tri-
bunal of the people has any discretion in this respect."
(Page 158.)

In this act the power is delegated to the cities (§ 1),
to be exercised by park commissioners, who are de-
clared to be public officers of the city (§ 8). It will be
observed that in the Abbott case the question whether
such a power could properly be delegated to municipali-

ties, to be carried into effect by such officers, was not considered.

In determining the validity of legislative acts the following propositions have been held by this court: (1) Our constitution limits, rather than confers, power, and hence we look to it to see what it prohibits instead of what it authorizes. (*Sumner County v. Wellington,* 66 Kan. 590, 72 Pac. 216, 60 L. R. A. 850, 97 Am. St. Rep. 396.) (2) To declare an act of the legislature unconstitutional some provision must be pointed out which, either in terms or by necessary implication, makes it so. (*Riley v. Garfield Township,* 58 Kan. 299, 49 Pac. 85.) (3) The judicial department should not interfere with the legislative conscience, unless there be a clear violation of some provision of the constitution. (*Comm'rs of Linn Co. v. Snyder,* 45 Kan. 636, 26 Pac. 21.) (4) No statute should be declared unconstitutional unless the infringement of the superior law is clear beyond substantial doubt. (*Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416.)

The courts of other jurisdictions differ widely upon the fundamental question involved, and their divergent views have been recently classified thus:

"(1) Cases in which the power of the state over the municipality is asserted to be practically unlimited (except as to express constitutional restrictions), and in which, consequently, acts of state compulsion in affairs apparently purely local have been sustained.

"(2) Cases in which the right of local self-government is declared to be inherent in the local subdivisions; and in which, consequently, acts of state compulsion in matters purely local have been condemned.

"(3) Cases in which the right of local self-government is asserted; but in which the courts differ as to what are matters of purely local concern." (Gray, Lim. Tax. Power & Pub. Indebt. § 638.)

The argument in support of the inherent independence of local government is attractive, appealing to the struggle for liberty, and enlisting in its aid the doctrine that representation should accompany taxa-

tion. It is based on the proposition that there are certain underlying principles, not always expressed in written constitutions, which restrict and limit legislative power and guarantee to municipalities the rights and privileges usually expressed under the term "local self-government." This view is stated with great vigor and learning by the supreme court of Michigan, in *The People v. Hurlbut,* 24 Mich. 44, 9 Am. Rep. 103. After tracing the origin and stating the reasons upon which the doctrine of implied restrictions rests, and depicting the evil results to be anticipated by conceding to the legislature the power to give over the control of public works in a city to a board appointed by the legislature, the court said:

"But local government is matter of absolute right, and the state cannot take it away. It would be the boldest mockery to speak of a city as possessing municipal liberty where the state not only shaped its government, but at discretion sent in its own agents to administer it; or to call that system one of constitutional freedom under which it should be equally admissible to allow the people full control in their local affairs, or no control at all." (Page 108.)

In harmony with this view and sustaining this implied limitation upon legislative power are the opinions in *State v. Mayor, Etc., of Des Moines,* 103 Iowa, 76, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157; *City of Lexington v. Thompson,* 113 Ky. 540, 68 S. W. 477, 57 L. R. A. 775, 101 Am. St. Rep. 361; *Reelfoot Lake Levee District v. Dawson,* 97 Tenn. 151, 36 S. W. 1041, 34 L. R. A. 725; *State, ex rel., v. Fox,* 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893; *Schultes v. Eberly,* 82 Ala. 242, 2 South. 245; *Vallelly v. Board of Park Com'rs* (N. Dak. 1907), 111 N. W. 615; *Blades v. Water Com'rs of Detroit,* 122 Mich. 366, 81 N. W. 271.

The same rule was adopted in Nebraska in *State v. Moores,* 55 Neb. 480, 76 N. W. 175, 41 L. R. A. 624, but was soon afterward rejected by the same court in *Redell v. Moores,* 63 Neb. 219, 88 N. W. 243, 55 L. R. A. 740, 93 Am. St. Rep. 431.

This question was considered in Texas, in passing upon the act of the legislature providing a commission plan of government for the city of Galveston. This plan has been widely considered and discussed. In brief, it provided that the entire control and government of the city and all its departments should be committed to five commissioners, three to be appointed by the governor and two to be elected by the voters of the city. The court of criminal appeals, in *Ex Parte Lewis,* 45 Tex. Crim. Rep. 1, 73 S. W. 811, held that the act was violative of the principle of local self-government, and void. During the same year, however, the supreme court of that state, in *Brown v. City of Galveston,* 97 Tex. 1, 75 S. W. 488, upheld the law as valid in every respect, and held in effect that no right of local self-government, based on history or tradition, existed in a city, whereby the legislature was precluded from making the members of its governing body gubernatorial appointees. After referring to the constitutional provision vesting legislative power in the senate and house, the court said:

" 'The legislative power of this state' means all of the power of the people which may properly be exercised in the formation of laws against which there is no inhibition expressed or implied in the fundamental law. Since a municipal corporation cannot exist except by legislative authority, can have no officer which is not provided by its charter, and can exercise no power which is not granted by the legislature, it follows that the creation of such corporations and every provision with regard to their organization is the exercise of legislative power which inheres in the whole people, but by the constitution is delegated to the legislature; therefore, it is within the power of the legislature to determine what form of government will be most beneficial to the public and to the people of a particular community." (Page 15.)

The opinions in these Texas cases fairly state the differing views taken by various courts upon the subject.

24—77 KAN.

In the act of the legislature of Tennessee repealing the charter of the city of Memphis, and providing for a taxing district and a government for the territory embraced within its former limits, it was provided:

"That the power to levy taxes of every description, and for any and every purpose whatever, is hereby taken away from said municipal corporations and each and every officer and representative thereof, and said taxing power lodged in the legislature of the state, and not elsewhere." (Acts of Tenn. 1877, ch. 71, § 2.)

In passing upon this act Mr. Justice Field, in *Meriwether v. Garrett,* 102 U. S. 472, 26 L. Ed. 197, said:

"The right of the state to repeal the charter of Memphis cannot be questioned. Municipal corporations are mere instrumentalities of the state for the more convenient administration of local government. Their powers are such as the legislature may confer, and these may be enlarged, abridged, or entirely withdrawn at its pleasure. . . . By the repeal the legislative powers previously possessed by the corporation of Memphis reverted to the state. A portion of them the state immediately vested in the new government of the taxing district, with many restrictions on the creation of indebtedness. A portion of them the state retained; it reserved to the legislature all power of taxation. It thus provided against future claims from the improvidence or recklessness of the new government. The power of the state to make this change of local government is incontrovertible." (Page 511.)

In *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. Ed. 440, the same court said:

"A municipal corporation in the exercise of its duties is a department of the state. Its powers may be large or small; they may be increased or diminished from time to time at the pleasure of the state, or the state may itself directly exercise in any locality all the powers usually conferred upon such a corporation.

"The statement that a municipality acts only through its agents does not mean that it so acts through subordinate agents only. It may act through its mayor or its common council, its superintendent of streets, or its board of public works.

"Whether the persons thus acting are appointed by

the governor or president, or are elected by the people, does not affect the question whether they are or are not parts of the corporation and its agents." (Syllabus.)

Referring again to Gray on Limitations of Taxing Power and Public Indebtedness, that author, after classifying the authorities, as already stated, says:

"The courts which assert the wider powers of the legislature in matters of local interest regard the local subdivisions purely as agencies of the state. They carry the doctrine that the legislature is supreme in matters of taxation to its fullest extent. They regard the state legislatures as having the whole legislative power of the state, without any implied exceptions in favor of local self-government. When we consider that in many matters, already noted, all parties concede the legislative supremacy; that there are but few matters of such purely local interest that some color of general interest may not be asserted to justify legislative interference; that the rules of construction require the courts to strain interpretation, if necessary, in order to uphold legislative action; that, in nearly every case of legislative interference with local affairs there is a strong party in the locality itself upholding such interference; and, finally, that constitutional amendments and revisions have been so frequent in recent years that the omission from a constitution of express restrictions in any respect may fairly be regarded as intentional, it must be admitted that those who deny the existence of implied limitations preventing the legislature from exercising compulsion in local taxation have, practically, the best of the argument." (§ 651.)

Among the authorities sustaining these views are *Churchill et al. v. Walker et al.,* 68 Ga. 681; *City of Newport v. Horton,* 22 R. I. 196, 47 Atl. 312, 50 L. R. A. 330; *Ohio ex rel. Atty.-Gen. v. Covington et al.,* 29 Ohio St. 102; *Coyle v. McIntire,* 7 Hous. (Del.) 44, 30 Atl. 728, 40 Am. St. Rep. 109; *The State ex rel. Herron v. Smith,* 44 Ohio St. 348, 7 N. E. 447, 12 N. E. 829; *Wm. B. Astor v. Mayor et al.,* 62 N. Y. 567; *Thomas v. Leland,* 24 Wend. (N. Y.) 65; *The People ex rel. v. Flagg et al.,* 46 N. Y. 401; *City of Philadelphia v. Field,* 58 Pa. St. 320; 1 Desty, Taxation, § 57.

The power of appointive boards to create debts and levy taxes, so urgently contended against by the plaintiffs, it will be seen was an essential feature of the Galveston case, *supra,* and has been sustained in other jurisdictions. An act of the legislature of Oregon authorized the city of Portland to construct water-works, and named certain individuals who should exercise that power. It further authorized this committee, as it was named, to issue and sell city bonds and build the works. Certain taxpayers sought to enjoin this committee, on the ground that there could be no authority given to contract such debts and build such works without the consent of the people—substantially the same argument as that made here. In its opinion the supreme court of that state, in *David v. Portland Water Committee,* 14 Ore. 98, 12 Pac. 174, said:

"Public parks, gas, water and sewage in towns and cities may ordinarily be classed as private affairs, but they often become matters of public importance; and when the legislature determines that there is a public necessity for their use in a certain locality, I do not think they can be designated as mere private affairs. That is a relative question." (Page 123.)

It will be seen that the court classified parks along with water-works as legitimate subjects of state control. The court also said:

"From any view, it seems to me that the measure which is attempted to be enforced by means of the act is a public advantage; and we must presume that it was necessary to adopt the act in order to insure its accomplishment. It, evidently, is not a scheme to advance the interests of any private individual, but an enterprise that aims to benefit an entire community, and I must regard it as public in its character. If I am correct in this conclusion, then the legislative assembly had an undoubted right to appoint agents to enforce its provisions, and to authorize the issuance of the bonds in the name of the city. I concede that it bears a semblance of arbitrariness, and that I would have been better satisfied with it if the city had been allowed to have issued the bonds; but they appear to acquiesce

in it, and, so far as we can observe, are endeavoring to maintain the act; and this court might, by intermeddling with the affair, do the city a great damage." (Page 125.)

The opinion discusses the distinction between those functions of municipalities which are merely proprietary, and in a sense private, and those which are public, or in which the people of the state at large are interested, citing Dillon's Municipal Corporations to the effect that this distinction is unsatisfactory and difficult to trace, and holding that the purpose in question was public.

In *The People ex rel. v. Walsh et al.*, 96 Ill. 232, 36 Am. Rep. 135, the same rule was applied to parks and the same view adopted of the validity of a law providing for the appointment of park commissioners, holding that it was competent for the legislature to vest the control of the parks of the city in park commissioners. It is true that the constitution of Illinois differed somewhat from our own in respect to such delegation of power; still, the reasoning of the court, we think, is quite applicable under the provisions of our own constitution.

That public parks are not for the sole use and benefit of the citizens of the city, but are for the enjoyment of the public generally, while ordinarily subject to municipal management, has been frequently held. (*Hartford v. Maslen*, 76 Conn. 599, 57 Atl. 740; *State ex rel. v. Board of Park Commrs.*, 100 Minn. 150, 110 N. W. 1121, 9 L. R. A., n. s., 1045; *Lincoln v. Boston*, 148 Mass. 578, 20 N. E. 329, 3 L. R. A. 257, 12 Am. St. Rep. 601; *Co. Ct. of St. L. Co. v. Griswold et al.*, 58 Mo. 175.)

In the Maslen case, *supra*, it was held:

"Such public parks are held not for the sole use of the people of a particular municipality, but for the use of the general public, which the legislature represents. Municipalities in controlling and managing such public parks act as governmental agencies, exercising an au-

thority delegated by the state, and are always subject to legislative control." (Page 611.)

Whatever view may be taken of those concerns of cities which are mainly private or proprietary in their nature, in matters in which the state has an interest, and which, as we have seen, are undoubtedly subject to the sovereign control of the state, the state may interfere at will with the local bodies, and may compel the local community to tax itself in order to carry out the obligations imposed upon it by the state. (Gray, Lim. Tax. Power & Pub. Indebt. §§ 617, 618.) Thus, cities have been compelled to levy taxes for the construction of a tunnel by a state commission (*Browne v. Turner,* 176 Mass. 9, 56 N. E. 969), to assist in paying for a canal (*Thomas v. Leland,* 24 Wend. [N. Y.] 65), and for improvement of streets connected with Central Park, in New York, under the control of park commissioners (*Wm. B. Astor v. Mayor et al.,* 62 N. Y. 567).

It was held in Minnesota that an appointed park board might lawfully determine the amount of taxes to be levied for park purposes, within the limit fixed by law. (*State v. West Duluth Land Co.,* 75 Minn. 456, 78 N. W. 115.) And the same rule was applied in Massachusetts, when the power to lay out streets in a city was delegated to an appointed board, with authority to levy betterment assessments. (*Masonic Building Assoc. v. Brownell,* 164 Mass. 306, 41 N. E. 306.) The court said:

"The authority of the legislature to delegate to boards and commissions appointed by the governor and council or by the courts, or, as this was, the power to assess and apportion certain expenses, reserving to parties aggrieved the right to a jury trial, has been exercised too long to admit of question now." (Page 311.)

"Acts authorizing state officials to construct public buildings, parks, and highways, the expense of which was to be paid locally, have been uniformly sustained, and it has been asserted that the transfer of the power

was no encroachment upon local government." (Gray, Lim. Tax. Power & Pub. Indebt. § 688.)

. That the city may be required by legislative act to establish parks and boulevards, and pay the expense incident to their creation and maintenance, must be conceded; and that the legislature, instead of requiring the mayor and council to levy the necessary taxes therefor, may devolve that duty upon another agency created by law logically follows. The complaint that the people of the city are thus taxed without representation cannot avail. The maxim referred to is applied in such cases in a very restricted sense, and the locality taxed is represented in the legislature which enacted the law. (Cooley's Const. Lim., 6th ed., 202.) Maxims of government are addressed to the wisdom of the legislature, but are not restrictive of legislative power. (Cooley's Const. Lim., 6th ed., 203.)

If the people of the only city affected at present by this act fear that it will, as claimed, prove to be harsh and oppressive in its operation, their appeal should be to the legislature for relief. The sole duty of the court is to determine its validity under the constitution.

Whether viewed in the light of our own decisions, collated above, or considered with reference to the weight of judicial opinions in other jurisdictions, we must hold that the act in question, so far as its operation and effect is challenged in this action, is constitutional and valid, and that the demurrer to the answer, was properly overruled.

The judgment is affirmed.