No. 20,507.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RENO et al., *Defendants*.

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*County Aid to State Fairs—Unequal Taxation—Subject of Act — Act General — Classification.* Chapter 177 of the Laws of 1915, which, among other pertinent and related matters, requires any county having over thirty thousand population to contribute $1500 to a state-wide fair held in such county, is a constitutional and valid act of the legislature.

Original proceeding in mandamus. Opinion filed July 8, 1916. Writ allowed.

*S. M. Brewster*, attorney-general, *S. N. Hawkes*, and *John L. Hunt*, assistants attorney-general, for the plaintiff.

*H. E. Ramsey*, county attorney, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: In this case the state asks for a writ of mandamus directing the board of county commissioners of Reno county to issue a warrant for $1500 in favor of the board of state fair managers pursuant to chapter 177 of the Laws of 1915, which provides as follows:

"An act requiring the county commissioners to assist in payment of premiums for agricultural fair associations that have held two successful fairs, and repealing all acts and parts of acts in conflict herewith.

"Be it enacted by the legislature of the state of Kansas:

"SECTION 1. That it shall be the duty of the county commissioners in Kansas to issue a warrant in favor of the treasurer of the county fair association, or any district fair association composed of less than one county, in their county, for a sum equal to one-half the amount of premiums paid by said county or district fair association, as shown by a sworn statement filed with the county clerk by the president or secretary of said fair association, upon its exhibits of live stock, agricultural products, educational, art and domestic departments; and it shall be the duty of the county treasurer to pay said warrant; provided, however, that such fair association has been in actual operation and holding a fair for two years, and that the total appropriations from the said county commissioners upon the funds of the county shall in no instance exceed the following scale: That in counties with a population of less

than 10,000, the amount so appropriated shall not exceed three hundred dollars. That in counties having a population of more than 10,000 and less than 20,000 the amount so appropriated shall not exceed six hundred dollars. That in counties having a population of more than 20,000 and less than 30,000 the amount so appropriated shall not exceed more than one thousand dollars. Provided, that counties of over thirty thousand population in which a state fair or a state-wide fair is held the county commissioners shall issue warrants as herein provided for $1500."

The application for the writ recites that in full compliance with chapter 293 of the Laws of 1913 a state-wide fair was held at Hutchinson in Reno county, and that Reno county contains more than 30,000 inhabitants.

The defendant demurs to the application for the writ on the following grounds:

"Chapter 177 of the Session Laws of 1915, the same being house bill No. 97, is unconstitutional for the following reasons:

"First. It violates article 11, section 1, of the constitution of the state of Kansas.

"Second. The act contains two subjects.

"Third. That chapter 177 of the Session Laws of 1915 is a special act.

"Fourth. That the classification in said chapter is arbitrary and without foundation."

These objections do not call for extended discussion. The act gives no offense to section 1 of article 11 of the constitution, which provides for a uniform and equal rate of assessment and taxation. This provision has frequently been construed to refer only to uniformity and equality of the assessment and rate of taxation throughout the territory where the tax is to be imposed. It does not mean that under all circumstances the aggregate percentage of tax levies in Reno county must always be the same as in all other counties. For example, Cheyenne county may be building a new courthouse; Wyandotte county may be constructing revetments on the Missouri river. These expenditures will necessitate differences in the total levies of these counties from those of Reno county. Here, in Reno county a state-wide fair has been conducted, and the legislature imposed a small share of the expense of that fair on Reno county. It was decided in *The State v. Lawrence*, 79 Kan. 234, syl. ¶ 4, 100 Pac. 485, that it was within the power of the legislature to impose part of the burden of establishing a university on the city honored and benefited by its location thereat;

and in the same case it was held that such legislation did not violate the constitutional provision relating to uniformity and equality in assessment and taxation (syl. ¶ 5, and pp. 244, 245).

(See, also, *Wulf v. Kansas City*, 77 Kan. 358, 366, 94 Pac. 207; *United States v. Railroad Company*, 84 U. S. 322, 329.)

Does this act contain two subjects? We think not. The gist of the act is to authorize and require boards of county commissioners to contribute to the expense of conducting certain fairs within their jurisdiction. Ordinarily two successful fairs must be conducted to entitle them to county aid, but a proviso is inserted to deal with the exceptional situation where a state-wide fair has been conducted instead of an ordinary county or local fair. Clearly the contents of the act are all germane and pertinent to one subject. The scope of the title is somewhat broader than the act itself, but that is not important. (*Ash v. Thorp*, 65 Kan. 60, 68 Pac. 1067.)

The body of the act does not require as a condition precedent to a contribution of county funds that the state-wide fair must be "successful" as indicated in the title. The text of the act would indicate that the word "successive" was intended instead of "successful." Whether it does or not, two state-wide fairs are not required to be held before county aid is to be extended. Moreover, we hardly think the success of a fair depends upon the existence of a cash balance of receipts over disbursements when all the accounts of the fair are settled. If that were the test of success, probably most of the great fairs and expositions would have to be chronicled as unsuccessful. If a financial balance was on hand after the fair's expenses were paid, there would be no necessity for a contribution of county funds for its assistance. Since a fair is usually fostered and encouraged by public authority for its educational and recreative value to the people, it would seem that any fair which is truly educational and instructive in its exhibits of art, science, industry and husbandry, and which is well patronized by popular attendance, and which is conducted in orderly fashion, is a successful fair. Presumably if a state-wide fair was attempted and ended in a fiasco, no contribution of county funds would be demanded.

Neither is the act constitutionally offensive as a special act. It is altogether general except as to the proviso touching the contribution to be made to state-wide fairs. As to the latter it is also general, although such fairs are not yet common. As time goes by and the interest in such fairs increases, we may look for such fairs in several of the larger counties of the state; and any successful state-wide fair held in any county of over 30,000 population will be entitled to the prescribed contribution from the county in which it is conducted.

The classification of the counties and the contributions which the various classes of counties may make toward the support of such state, county or district fairs is reasonable, and follows the established customs of this commonwealth on many phases of our legislation. Witness the classification of counties touching the maximum levies for county taxation (Gen. Stat. 1909, §§ 9395-9404) and the act fixing the salaries of county officers on a classified basis of county population (Laws 1913, ch. 197).

There appears to be no constitutional infirmity in chapter 177 of the Laws of 1915, nor any sufficient reason shown why the board of county commissioners of Reno county should not honor a voucher properly executed by the board of state fair managers and issue the statutory warrant thereon.

The writ is allowed.